HEINZE et al., Respondents, *v.* KLEINSCHMIDT, Administrator, et al., Appellants.

(No. 1,542.)

(Submitted October 4, 1900. Decided February 25, 1901.)

*Mines and Mining—Tenants in Common—Partition—Receiver—Record on Appeal.*

1.   In a suit for partition between tenants in common a court of equity has power to appoint a receiver; but this power should be exercised with great

caution lest injury be done to the rights of a co-tenant, hence in any such case where an appointment is sought there must be shown a legal or equitable right, reasonably clear and free from doubt, attended with danger of loss, and that no injury will result to the party whose rights are thus invaded.

2.  Mere colorable ouster on the part of a tenant in common who is in possession of a mining claim by the consent of a co-tenant who has brought a suit for partition, and the mere fact that the care of the property involves considerable expense, will not authorize the appointment of a receiver pending the final hearing of the suit.

3.  Where a co-tenant has gone into possession of mining property by consent of his co-tenant, with the understanding that he was at liberty to engage in mining, nothing short of a clear ouster and refusal to account, coupled with insolvency, would justify a court in taking the property from him through the agency of a receiver.

4.  Under Section 592 of the Code of Civil Procedure, each tenant in common has the right to have mining property stand as it is until it is finally partitioned, and to justify a court in invading this right and mining the property through a receiver there must be a very clear showing.

5.  Where a record on appeal contains much matter impertinent and immaterial, the party offending in this particular will be subject to the payment of costs.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION by F. Augustus Heinze and another against Carl Kleinschmidt, administrator of the estate of John D. Allport, deceased, and others. From an order appointing a receiver certain defendants appeal. Reversed.

## STATEMENT OF THE CASE.

On January 22, 1900, the plaintiffs began their action in the district court of the Second judicial district to obtain a decree of sale for the purpose of partition of the Minnie Healy (patented) lode claim, situate in Silver Bow county. The complaint alleges that defendant Kleinschmidt is the administrator of the estate of John D. Allport, who died in October, 1895, and that the other defendants, except Miles Finlen, are his heirs at law, each being entitled to an undivided one-fifth interest in intestate's estate, subject to the possession of the said Kleinschmidt for the purposes of administration; that at the time of his death said Allport was seized in fee and was in possession of an undivided one-fourth interest in the Minnie

Healy claim, the same being now in the possession of the defendant Kleinschmidt under his trust; that plaintiff Heinze is seized in fee and in possession of an undivided five-eighths, and the Johnstown Mining Company of an undivided one-eighth interest therein; that plaintiff Heinze is also the equitable owner of an additional one-twentieth of the said claim, which is the interest therein inherited by defendant Caroline V. Kelley as heir of said Allport; that defendant Finlen asserts an interest in the claim, and particularly title to the interests belonging to plaintiffs, but without any foundation in fact therefor; that the said Kelley, aided and abetted by Finlen, heretofore presented to the district court of the Fifth district (the same court which granted letters of administration to Kleinschmidt) a certain paper purporting to be the last will of John D. Allport, and devising the whole estate to said Kelley, and proposed the same for probate, but that said court, upon a hearing, had declared the same a forgery; that before the bringing of the present action said Kelley had entered into an agreement with Finlen by which she had bound herself to convey to him all her interest in the claim; that Finlen had thereafter, for a valuable consideration, assigned to plaintiff Heinze his rights thus acquired from Kelley, but that Kelley, with notice of Heinze's rights under his assignment from Finlen, had conveyed her interest by deed to Finlen, who took and holds the same as trustee for Heinze, subject to the payment to Finlen of $5,000, the amount he paid Kelley therefor, which said Heinze is ready and willing to pay; that notwithstanding these facts Finlen claims this interest as his own; that Finlen, by reason of his contract with Kelley, pretends and claims to have some right or interest in the other undivided four-twentieths of the Minnie Healy claim, which belonged to John D. Allport at the time of his death, but that such claim is without foundation in fact; that, aside from the claims of Finlen thus made, the rights of all parties are free from adverse claims or incumbrances of any kind or character; and that the property, being valuable almost solely by reason of the copper ores de-

posited therein, cannot be partitioned otherwise than by a sale and distribution of the proceeds among the parties entitled. The Court is asked to determine the rights of the parties and decree the sale.

On January 30th thereafter the plaintiffs filed their verified petition in this cause, asking for the appointment of a receiver pending the final hearing, alleging as grounds for relief the following: That the defendants Kleinschmidt, as administrator of Allport, and Mary A. Miller, having entered into the possession of the whole of the Minnie Healy claim and the workings therein, are now, and for a long time past have been, extracting, removing and converting to their own use the ores therein, excluding the plaintiffs therefrom and refusing to render them any account; that said defendants assert the right to occupy and possess the whole of the claim and to extract the ores therefrom, and that they will refuse to render the plaintiffs any account thereof, or to pay over to them any part of the proceeds thereof; that plaintiffs are entitled to receive their proportion of the net values of all ores which may have been or which shall hereafter be taken from the claim by said defendants, and, but for the facts hereafter alleged, would be entitled to join with them in working the claim upon payment of their share of the expenses of mining, or to receive upon the dump their proportion of the ores taken out; that the defendant Miles Finlen, in order to harass and annoy plaintiffs, and to cast a cloud upon their title to the Minnie Healy claim by fraudulent and false adverse claims thereto, and to prevent them from having the use of their property and from developing the same by mining and extracting the ores therefrom, theretofore began an action in the district court of the Second district wherein he falsely and fraudulently asserted that he had an interest in said claim and had been in possession thereof, and that the plaintiffs forcibly and without his consent had ousted and ejected him therefrom and had taken possession thereof, and that they would mine and extract the ores therefrom and convert them to their own use in violation of his rights; that

in said action, by reason of said false and fraudulent preten-
sions and claims on his part, he procured said court to issue an
injunction against the plaintiffs restraining them from doing
any mining upon the property or removing ores therefrom;
that said action is pending and undetermined, and cannot be
tried for a long time to come; that, after the procuring of said
injunction as alleged, the said Finlen, for the purpose of fur-
ther annoying plaintiffs and obstructing them in their enjoy-
ment of their rights, began an action in said district court
against John Devlin, Marian Devlin and Mary E. Reilly, who
for a long time prior thereto had been the owners of an undi-
vided three-fourths interest of the Minnie Healy claim, as the
predecessors of the plaintiffs, and falsely and fraudulently
claimed to be entitled to a conveyance from them of their in-
terests; that said action was thereafter transferred to the United
States circuit court of the Ninth circuit, district of Montana,
and that plaintiffs, having intervened therein, have set up their
rights and asked to have their title quieted; that said proceed-
ing is pending, and cannot be heard and determined for a long
time to come; that the effect of the injunction so procured as
aforesaid is not only to prevent the plaintiffs from working
the Minnie Healy claim, but also to prevent them
from receiving from their co-tenants in possession, the
said Kleinschmidt and Miller, their proportion of the
ores extracted from the property by them, or of
the net value of the same; that said defendants, by
reason of the pendency of the said injunction, will not and
cannot account to the plaintiffs for the value of any of the ores
extracted, and cannot and will not deliver to them upon the
dump their proportion thereof; that the cost and expense of
maintaining the claim in idleness during the determination
of the various suits aforesaid, as well as the present action,
will be about $500 per month; that the claim contains bodies
of valuable ore, which can be readily mined and extracted,
and that it is to the best interest of all of the owners or parties
interested therein to have the same extracted and to have min-

ing operations conducted therein, to the end that it may be
properly preserved and developed and its value thereby in-
creased; and that unless the ores are so mined and disposed of,
and the proceeds preserved, the owners of the said claim, and
particularly the plaintiffs, may suffer great loss, by reason of
the probable decline in the price of copper pending the litiga-
tion over the title,—the injunction bond required of said Fin-
len not being sufficient to protect the plaintiffs from probable
loss.

The petition further alleges that there is a certain vein,
bearing copper, gold and silver, which has its top or apex with-
in the boundaries of the said Minnie Healy lode claim, and
which on its dip or incline departs from the perpendicular in
its downward course to the north; that the development so far
upon said vein indicates that it passes beyond the side lines of
the Minnie Healy claim and enters into the Piccolo and Gam-
betta lode claims beneath the surface; that these latter claims
are immediately north of the Minnie Healy claim and are
owned by the Boston & Montana Consolidated Copper and
Silver Mining Company, which for a long time has been min-
ing and extracting ores therefrom by means of underground
workings; that plaintiffs are informed that the said Boston &
Montana Consolidated Copper and Silver Mining Company
is now engaged in carrying away and converting to its own use
large quantities of ores from the said vein belonging to the
Minnie Healy claim; that to prove the identity and continuity
of the said vein from its apex in the Minnie Healy claim into
the workings of the Piccolo and Gambetta claims will require
a large amount of development work and entail a large outlay
of money; that heretofore defendant Miles Finlen commenced
an action in the district court of the Second district for an in-
junction to restrain the said Boston & Montana Company
from mining and carrying away any of the ores from said vein;
that said defendant, before obtaining an injunction, however,
desisted from prosecuting said suit and permitted said Boston
& Montana Company to continue its mining operations on the

vein, without further developing the same from the apex down-ward to prove that it belongs to the Minnie Healy claim, thus acquiescing in said trespass; that the injunction obtained by Finlen against the plaintiffs as alleged was designed to prevent them from prosecuting the work necessary to make such proofs, notwithstanding said Finlen believes that said vein has its apex in the Minnie Healy claim and the said corporation is tres-passing thereon; that plaintiffs believe that the vein belongs to the Minnie Healy claim; that the ores which can now be mined therefrom have a value in excess of $100,000, and that if this fact can be shown it will establish a value for the claim of several hundred thousand dollars; that it is to the interest of all the parties to have this work done at once, to the end that an injunction be obtained to restrain further trespasses; that it is also to the interest of all parties that the ores in the claim be extracted; that their proceeds, so far as necessary, be devoted to this development work, to the keeping of the prop-erty in repair, to the prosecution of any suits necessary to re-strain the said trespass or any other trespass, and to have the balance preserved for the parties entitled under the decree of partition when finally made.

Upon the filing of this petition an order to show cause was issued and set for hearing on February 5th. At that time the plaintiffs presented their evidence. The defendants Finlen and Kelley did not appear, both being absent from the state and neither having been served with summons or notice of the hearing. The other defendants entered their appearances by counsel without service of process, but made no resistance to the petition. The matter was then submitted, but no decision having previously been rendered, the defendants Kelley and Finlen entered their appearances by counsel on February 17th and asked to be heard. Leave was granted. Thereupon they answered by counsel, denying the material averments in the complaint and petition, including all allegations as to wrong-doing on their part, and introduced evidence controverting them. Thereupon the court, after consideration, made an order

appointing one E. H. Wilson as receiver with power: to take possession of all the interests in the Minnie Healy claim to which the plaintiffs assert ownership, including the Kelley interest, and to enter into all the workings and ore bodies therein with the administrator of Allport and the heirs other than Kelley; to operate the mine in all portions not in possession of the administrator and the Allport heirs; to have reduced all ores extracted; to expend the proceeds in keeping the mine in repair; to do development work sufficient to demonstrate the ownership of the veins being worked in the Gambetta and Piccolo claims, which plaintiffs believe have their apexes in the Minnie Healy claim; to demand and receive from the heirs of Allport and the administrator accountings for any mining operations conducted by them in any of the workings of the claim; and to prosecute any actions necessary in his judgment to protect the property from depredations by any person pending the litigation.

The receiver is expressly directed to extract only so much ore as may be necessary to pay expenses and to accomplish the duties assigned him in the order. The defendants Kelley and Finlen have appealed.

*Mr. William Scallon, Mr. J. K. MacDonald* and *Mr. T. J. Walsh,* for Appellants.

*Messrs. McHatton & Cotter,* for Respondents.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

The only question presented to this Court is whether the evidence submitted to the court below was sufficient to authorize the order of appointment. A determination of this question requires an examination of the evidence tending to support the averments in the petition. We have set forth in the statement particularly the contents of the complaint and petition,

for the reason that they were treated at the hearing as affidavits, and so far as they tend to establish any material fact they are considered as a part of the evidence.

Though there is evidence tending to show that a controversy exists between Finlen and the Allport heirs, other than Kelley, touching the present ownership of the Allport interest, and growing out of the contest over the probate of the alleged will of Allport, it is admitted in the pleadings that Allport died intestate, and that the defendants, other than Finlen, are his heirs at law. We shall therefore assume, for the purpose of this investigation, that each of them, except Kelley, is now the owner of an undivided one-twentieth of the property in controversy. Kelley has no interest in the property, nor in this controversy, except so far as she may be bound under her agreements with Finlen, as appear hereafter, to prosecute to a successful issue the probate of the alleged will, and thus make good to him her title to the entire Allport interest. At the time this hearing was had the will had been declared a forgery, as alleged in the petition. It is admitted, however, that a motion for a new trial was pending, and that the controversy as to the ownership of this interest is still undetermined. It appears that at the death of Allport in 1895, John Devlin, Marian Devlin and Mary E. Reilly were tenants in common with him in the property, owning the other three-fourths. It further appears that Finlen now holds the legal title to a one-twentieth interest by deed from Kelley, dated May 22, 1899, executed in pursuance of an agreement contained in a prior lease dated October 16, 1896, by which she bound herself upon certain conditions to convey to Finlen the entire Allport interest. The deed just mentioned also conveys to Finlen any interest Kelley may acquire under any decree which may be rendered in the proceedings looking to the probate of the alleged Allport will. It is shown that Finlen on October 16, 1896, became a lessee of the interests of John and Marian Devlin and Mary E. Reilly, with the right of purchase upon compliance with the terms of the leases on or before February 3, 1900. The conditions of

this lease and the one from Kelley were the same. There is no controversy but that the conditions contained in these leases have been fully complied with in all respects. It further appears that the Devlins and Mary E. Reilly subsequent to the making of the leases to Finlen conveyed their interests to the plaintiffs,—five-eighths directly to Heinze on June 3, 1899, and one-eighth to the Johnstown Mining Company through mesne conveyances dated, respectively, November 12, 1898, and May 18, 1899. The plaintiffs claim that Heinze made a verbal agreement with Finlen on November 21, 1898, which was subsequently executed, whereby Finlen bound himself to transfer and set over to Heinze his rights under the leases from Kelley, the Devlins and Reilly, and that the plaintiffs are therefore properly vested with the title to the Devlin and Reilly interests, and that Heinze is entitled to the Kelley interest. This is disputed by Finlen, who has a suit pending in the United States circuit court against the Devlins and Reilly, and also plaintiff Heinze, who has intervened therein, to compel a conveyance to him according to the terms of the lease. This defendant has also a suit in the district court of Silver Bow county against the plaintiffs, in which he seeks to eject them from the Minnie Healy claim. In this suit an injunction was issued restraining the plaintiffs from working the property pending a trial. These are the suits referred to in the petition as being founded upon fraudulent claims; they having been brought, it is alleged, to harass and annoy plaintiffs and to prevent them from the enjoyment of their property, and for no other purpose.

The situation of the title is, therefore, such that, if Finlen should succeed in his suits now pending, the plaintiffs would have no interest in the Minnie Healy claim. The partition decreed in this case, if any at all, would then be between him and the Allport heirs, other than Kelley, subject to the administration. If the Allport will should finally be admitted to probate, the whole property would belong to Finlen. If the plaintiffs should succeed in these suits, they would be tenants

in common with the Allport heirs, except Kelley, or, if the will should be established, the owners of the entire property. With the merits of these controversies we have nothing to do on this appeal. At present we are concerned only with the fact of their existence, and the purposes and motives actuating Finlen in connection with them. As to the charges of bad faith and wrongdoing on the part of Finlen in the bringing of these suits, and his sinister purposes therein towards the rights of the plaintiffs, there is nothing in the evidence to support them, beyond the fact that these suits have been brought and are now pending. There is nothing to show that he brought them in bad faith, or that he has any other purpose therein than to have his rights declared. If he thought at the time they were brought that he was entitled to conveyances from the Devlins and Reilly, and that the plaintiffs were invading his rights, it was entirely proper for him to seek appropriate redress from all of them. Nothing else appearing, a presumption of good faith and proper motive must be indulged in his favor. Moreover, the fact that the district court issued an injunction in connection with the ejectment suit and after a hearing thereon, justifies the inference that that court was of the opinion that the plaintiffs are probably wrong in their claims. They had an opportunity on that hearing to show that the claims of Finlen are fraudulent and without foundation, as well as that the motives prompting him are malicious,—yet it seems they did not avail themselves of this opportunity. That Finlen brought suit to restrain alleged trespasses upon the Minnie Healy claim by a third party through the workings in the Gambetta and Piccolo claims, and did not prosecute it vigorously, furnishes in itself no ground for the charge that he is acquiescing in wrongs to plaintiffs by such third parties. He was and is under no obligations to plaintiffs to press this suit. He may have desisted because of an apprehension that he could not succeed; or because he became satisfied that he was wrong; or because he had some satisfactory arrangement with the corporation about compensation. In any event, it comes with ill grace from the plaintiffs to in-

sist that any obligation rests upon him in this connection, while they deny that he had any interest in the property, there being nothing in their way, until they procured the appointment of the receiver in this case, to prevent them from bringing and prosecuting any suit necessary to protect their own rights. If they had the requisite information, the obligation rested upon them to protect the rights which they now assert, and not upon Finlen. They were in possession at the time they began this suit; with the knowledge of the facts touching trespasses, which their charges against Finlen imply that they had at the time, they could easily have invoked successfully the preventive power of the court, even without additional exploration.

Passing now to an examination of the charges of wrongdoing on the part of the administrator and Mary A. Miller, we notice first that they entered their appearances in this case without service of process, and, though accused of ousting the plaintiffs from possession, and refusing to render any account of their alleged operations, they made no attempt to justify or deny the charges. They thus impliedly, at least, confessed the truth of them. Finlen and Kelley undertook to show that no real ground for the allegations in this connection existed, and that these two defendants, in collusion with plaintiffs, had attempted to bring about a situation upon which the court would be justified in taking charge of the property.

The facts are: On January 8, 1900, the administrator applied to the district court having jurisdiction over the estate for permission to engage in mining the Minnie Healy claim. This application was denied. After that time, and until this suit was instituted, plaintiff Heinze and he had various consultations about engaging in operations there, though Heinze was then enjoined from doing so. On January 22d this suit was brought, the plaintiffs then being in possession. On January 23d Heinze formally delivered possession to the administrator, including a large amount of supplies belonging to the plaintiffs, with the machinery used by them in operating the property prior to the Finlen injunction. Just previous to that

time Heinze had told the administrator that he (the adminis-
trator) could operate the mine if he chose to do so, provided
the ore taken out should be shipped to Heinze. P. E. Mahoney,
the night watchman in charge of the machinery at the mine,
remained there just as before, as did also Sullivan, the day
watchman. The former was sworn as a witness. He testified
that he had never been hired by Kleinschmidt, but always, even
up to the time of the hearing, took his orders and expected his
pay from Heinze. "Heinze was his boss." He thought Sullivan
was employed in the same way as himself, their duties being the
same. His business was to keep up fires and keep things from
freezing. Very little, if any, work was done after January 22d
or 23d; and he saw no ore taken from the mine, except one
wagonload which he caught a man stealing. No ore was hoisted
from the mine after the date last mentioned. Some men were
passing in and out, and some work was done; there being not
more than a dozen men employed. Kleinschmidt and his fore-
men were there now and then; but Mary A. Miller was never
there, and no one was there to represent her. Other evidence
showed that she had not been in the state for several months.
One Halford made affidavit on February 5th that Kleinschmidt
and Mary A. Miller had been in exclusive possession of the
mine and operating it since about January 25th, and had
"shipped certain ore." Plaintiff Heinze made an affidavit that
he had theretofore caused demand to be made upon Klein-
schmidt and Miller for a statement of their operations, but none
had been made. A mining engineer in the employ of plaintiffs
also made an affidavit that on February 3d he had made an
application for an inspection of the mine, but had been refused
admission by "the representatives of the working defendants,
though they knew that the application was on behalf of plain-
tiffs." These statements were all made under oath, in face of
the fact that Mary A. Miller was not in the state at the time
the alleged operations were carried on and the demands made,
and without any showing that she had any one in the state to
represent her in any enterprise whatever. It may not pass un-

noticed, either, that the application for the inspection was made on the 5th day after the petition was filed in this case, and that no time is fixed at which the statement of the operations was demanded. The same may be said as to the amount of the ore Halford saw shipped, and the date of the shipment. His affidavit is silent on these points. An officer into whose hands some papers had been put for service upon Kleinschmidt and his alleged foreman, one Kane, went to the Healy mine on February 1st; he then found the day watchman engaged in the same kind of duties as those performed by the night watchman, but no mining operations were going on; nor did he afterwards find any one engaged at work there, though often there until February 16th. We have patiently examined the whole record, and the affidavit of Halford is the sole bit of evidence, apart from the general averments made in the petition, which was verified by Heinze, tending to show an ouster by Kleinschmidt. There is nothing whatever to show any wrong on the part of Miller. The evidence is well-nigh conclusive that no mining was going on at any time after February 1st, and that neither Kleinschmidt nor any one representing him was at the mine after that time. The statement by Heinze that an account of the operations was demanded, and that none was rendered, is of no significance, in view of the fact that it does not appear when such demand was made, nor whether any opportunity was allowed for compliance by the administrator, so that the presumption might be indulged that the administrator was unwilling to comply. Heinze was sworn and examined fully at the hearing—his silence in connection with this matter is significant, especially so in view of the fact that the mining operations, if any, conducted by the administrator extended over a period of only seven days. The petition herein was filed just seven days after the administrator was put in possession by plaintiffs. It does not appear that he shipped any ore, or if he did, that he did not ship it to Heinze himself, in pursuance of the understanding had at the time possession was delivered to him. The refusal of the application of the engineer on Feb-

ruary 3d is also insignificant and does not tend to show the truth
of any statement contained in the petition, since it conclusively
appears *aliunde* that Miller was not in the state, had never
been in possession in person or by agent, and had never taken
a pound of ore from the property; and since it also appears that
Kleinschmidt was then out of the state, and that no one was
at the mine, other than a watchman—ostensibly in the employ
of Heinze or nobody—and whose only task was to keep watch
of things and prevent the machinery from freezing up. True,
it appears that the names of Sullivan and Mahoney, the watch-
men, were not on plaintiff Heinze's pay roll after January
22d. It is a remarkable fact, however, that they remained
there after Kleinschmidt went into possession, but were never
hired by him, and looked to Heinze for their orders and their
pay. The only conclusion possible from these facts is that the
plaintiffs and the administrator joined hands to create a color-
able ground for the appointment of a receiver through whom
they could have the property mined, notwithstanding the in-
junction procured by Finlen to preserve it intact until he could
establish his rights, and the proceeds expended in development
work, which might or might not add to the value of it, or might
or might not protect it from trespasses. And this in face of
the fact that the plaintiffs, notwithstanding the injunction,
were at liberty to bring as many suits as they chose to restrain
these alleged trespasses. The plaintiffs well knew that though
these suits were pending against them, they furnished no ground
for asking a court of equity to take the property out of their
hands and relieve them from the burden of caring for it; they
well knew that in order to bring this about it was necessary to
be in a position in which they could complain of wrong on the
part of some one who claimed to be a co-tenant; and hence this
suit upon a merely colorable ouster on the part of the adminis-
trator, who seems to have been not averse to aiding them in
their design. So far as this feature of the case is concerned,
there were no facts before the court to warrant the order. The
court was misled to make it by the specious but unfounded and

unsupported complaints of the plaintiffs by which they sought to bring themeselves within the principles which move a court of equity in such cases to grant the extraordinary relief demanded.

The administrator having gone into possession (if, indeed, he was in possession) by consent of the plaintiffs, with the understanding that he was at liberty to engage in mining, nothing short of a showing of a clear ouster and refusal to account, coupled with a want of financial ability to answer in a suit for this purpose, would probably justify a court in taking the property from his hands through the agency of a receiver. He was not imperiling the interests of the estate in any way. Whatever he did in his mining operations he did at his own risk (*In re Rose's Estate,* 80 Cal. 166, 22 Pac. 86); and that he was claiming to act as administrator in no wise affects the situation.

The allegations upon the subject of a probable fall in the price of copper pending the litigation do not merit serious consideration; they are hardly susceptible of proof. And it cannot be urged seriously that a court of equity should be moved to the exercise of its extraordinary powers by conclusions founded upon speculations upon the probable condition of supply and demand as to a particular commodity in the markets of the world.

Touching the outlay necessary to preserve the property while idle, a more serious question arises. The proof in this connection, however, is not satisfactory. On the one hand it appears that there is a hoisting plant with necessary machinery on the claim, and that it is necessary to keep watchmen to look after it and the claim, at a cost of about $500 per month. It also appears—incidentally, however—that the machinery probably belongs to the Montana Ore Purchasing Company, a corporation with which plaintiffs are associated. On January 23d the hoisting plant was delivered to the administrator under an arrangement with the plaintiff Heinze, the particulars of which are not shown. Whether its use there as a means of ingress and egress is necessary to the preservation of the openings in

the property, or whether these openings are in such a condition that they need care and attention, is not shown. If from their nature and condition they do not require attention and outlay, then the expenses incident to the employment of watchmen would under no circumstances be a proper charge upon the property. On the other hand, Finlen has not at any time attempted to interfere with the possession of the plaintiffs or the administrator, except to enforce his rights by suit; and there is nothing in the evidence to furnish any reason why either Heinze or the administrator, who seem to have joined forces against Finlen, should not retain possession and care for the property, with a right to recover of Finlen the amount expended for this purpose if they succeed in establishing their rights against him. Surely the plaintiffs have ample protection against any loss to them under the injunction bond given by Finlen in the ejectment suit. If this bond is not sufficient in amount, as plaintiffs charge, the district court, upon proper application, would readily exact a sufficient one.

That a court of equity has power in cases like the present to appoint a receiver is well settled. But in any case where an appointment is sought there must be shown a legal or equitable right, reasonably clear and free from doubt, attended with danger of loss. (Smith on Receiverships, Secs. 15, 317, and cases cited; High on Receivers, Secs. 606, 607.) The duties of a court, however, in the exercise of this power are exceedingly delicate and should be exercised with great caution, lest in the effort to protect the subject of the litigation the property would be illegally taken from one rightfully in possession and his rights and interests be sacrificed without any redress whatever. (*Id.*) Taking charge of property in the exercise of this power is somewhat analogous to the levying of an execution *in limine,* and subjecting the property to expenses and charges pending litigation, and to this extent consuming it entirely; hence the power should never be used unless it be reasonably clear that no injury will result to the parties whose rights are for the time being invaded. As between tenants in common, as stated in

the text of Mr. Smith, at Section 317, *supra*, the grounds of appointment usually are: "(a) Where one tenant is in possession and excludes his co-tenant from participation in the possession or income; (b) where the tenant in possession is insolvent and refuses to account to his co-tenant; (c) where one tenant refuses to join his co-tenant in the execution of necessary leases for the property owned in common, or interferes in the collection of rents with the tenants in possession; (d) where the court can see from the showing made that the appointment of a receiver is required in order to properly protect the interests of parties." The case at bar does not come within any of these rules; nor has any case been cited by counsel wherein a different rule has been applied. It seems that it would be entirely inequitable to allow plaintiffs to surrender the property here involved into the possession of the court merely because its care involves considerable expense.

Under the presumptions usually indulged in favor of the legal title, the plaintiffs, Finlen, and the Allport heirs, except Kelley, are, for the purposes of this appeal, tenants in common. Under Section 592 of the Code of Civil Procedure, fixing the status of such estates, and as construed with reference to mining claims in *Anaconda Copper Mining Co.* v. *Butte & Boston Mining Co.,* 17 Mont. 519, 43 Pac 924; *Red Mountain Consolidated Mining Co.* v. *Esler,* 18 Mont. 174, 44 Pac. 523; *Connole* v. *Boston & Montana C. C. and S. Mining Co.,* 20 Mont. 523, 52 Pac. 263; *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642; and *Butte & Boston Consol. Mining Co.* v. *Montana Ore Purchasing Co.,* 25 Mont. 87, 63 Pac. 825,—each of these parties has the right to have the property stand as it is until it is finally partitioned. It would therefore require a much clearer showing than is here made to justify a court in invading this right, and mining the property through a receiver, for any purpose.

We feel impelled to call attention to the condition of the record filed on this appeal. It contains many pages of matter entirely impertinent and useless, which has served only to add

materially to the labor involved in this investigation. On the hearing in the trial court many court files were introduced in part, the particular part being designated. Instead of incorporating into the record on appeal only the material parts of these files, they were copied in full. Hereafter the party offending in this particular will be subject to the payment of costs.

The order appealed from is reversed and the cause is remanded.

*Reversed and remanded.*

Mr. JUSTICE MILBURN, not having heard the argument, takes no part in this decision.