[Civ. No. 1333. Second Appellate District.—June 6, 1913.]

DABNEY OIL COMPANY (a Corporation), Respondent, v. PROVIDENCE OIL COMPANY OF ARIZONA (a Corporation), et al., Appellants.

RECEIVER—GROUNDS FOR APPOINTMENT—SECTION 564 OF THE CODE OF CIVIL PROCEDURE.—Section 564 of the Code of Civil Procedure provides in what cases the court may appoint a receiver; and, in the absence of facts showing that a case falls within some or more of the provisions of the section, no authority exists for such appointment.

ID.—GROUNDS FOR APPOINTMENT OF RECEIVER—SUBDIVISION 6 OF SECTION 564 OF CODE OF CIVIL PROCEDURE.—Subdivision 6 of section 564 of the Code of Civil Procedure, providing that a receiver may be appointed in all other cases than those mentioned in the preceding subdivisions where heretofore such practice has prevailed in courts of equity, cannot be invoked in the case presented by a complaint which alleges facts bringing it within one of the preceding subdivisions.

ID.—CAUTION IN APPOINTING RECEIVERS.—The power to appoint a receiver is a delicate one, and should be exercised with caution lest the injury thereby caused be greater than the injury sought to be averted.

ID.—REFUSAL TO APPOINT RECEIVER WHEN OTHER REMEDIES ADEQUATE. A receiver should not be appointed where the desired result can be obtained by less stringent means calculated to protect the rights of all parties.

ID.—RECEIVER FOR OIL LANDS—PROPRIETY OF APPOINTING.—In an action to recover oil lands and the fund derived from the sale of oil abstracted therefrom, it is an abuse of discretion to appoint a receiver where the sole purpose of the order, besides empowering the receiver to seek the recovery of moneys, profits, and income theretofore derived by the defendants from the operation of the property, was to sequester the net income as therein defined, by requiring the defendants to pay it over to the receiver, when the rights of the parties can be protected, and the purpose in view can be accomplished, by an injunction.

APPEAL from an order of the Superior Court of Los Angeles County made *pendente lite* appointing a receiver. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

J. S. McKnight, Murphey & Poplin, Kemp, Mitchell & Silberberg, Ben. Goodrich, and Geo. E. Whitaker, for Appellants.

Valentine & Newby, for Respondent.

SHAW, J.—This is an appeal from an order of court made *pendente lite* appointing a receiver.

The action grew out of the following facts: Plaintiff was and is a corporation organized under the laws of the state of Arizona, and authorized to do business in California. In March, 1908, it was, and had been for several years, the owner of a leasehold estate in one hundred and ten acres of oil-producing lands in the McKittrick District, and the owner in fee of one hundred and sixty acres of undeveloped and unproved oil lands in the Midway District, all in Kern County. During the years 1906, 1907, and 1908 it neglected and failed to pay the corporation license-tax required by the statutes of the state, by reason of which fact its right to conduct business therein as a corporation had been forfeited. The fact, however, that a forfeiture followed as a result of such default in the payment of the license-tax was unknown to its directors at the time. The company had become involved financially and in an action instituted therefor by the lessors, its lease to the lands in the McKittrick District had been declared forfeited by a judgment rendered, from which an appeal had been taken and a motion made for a new trial. On March 10 1908, the board of directors, at a meeting held in Rhode Island, adopted a resolution as follows: "That Messrs. Thomas F. Gilbane and James Spears (both of whom were directors) be and are hereby appointed an executive committee to conduct the affairs of the Dabney Oil Company, with power to raise funds either by note, secured by a mortgage on any or all of the property of the company, or by other means, for the purpose of settling the claims against the company and to purchase property or leaseholds and to develop same, subject to and by the approval of the board of directors." Pursuant to this resolution Gilbane and Spears, both of whom were members of the board of directors, came to California, where they learned for the first time that as a result of default on the part of the corporation in paying

its license fees, its right to do business in the state as a corporation had been forfeited, and that a judgment had been rendered against it, the effect of which was to declare the lease of the McKittrick property forfeited. Thereupon Spears and one Potter entered into negotiations with the owners of the leasehold, as a result of which they purchased for themselves and in their own names the fee of the property for the sum of forty thousand dollars, and caused the proceedings for prosecuting the appeal from the judgment to be dismissed. Thereupon they, with Gilbane, caused to be organized under the laws of Arizona a corporation known as the Providence Oil Company, with a capital stock of two hundred and fifty thousand dollars, all of the stock of which was to be issued to and owned by the Dabney Oil Company and its stockholders, it being provided that said three persons as trustees should for five years have the voting power upon fifty-five per cent of the stock, their intent apparently being that, except as to the right retained to vote the fifty-five per cent of the stock, this company should take the place of and be substituted for the Dabney Oil Company. Thereupon Spears and Potter executed to the Providence Oil Company a lease of the property, title to which they had acquired and of which, prior to forfeiture thereof, the Dabney Oil Company possessed a leasehold. The royalty reserved in this lease was the same as that under which the Dabney Oil Company held the property from its lessors. The lease contained a provision requiring the Providence Oil Company to bore a certain number of wells each year, but this provision was canceled and annulled. As purported managers in charge of the settlement of the affairs of the defunct Dabney Oil Company, they, on November 25, 1909, executed a deed conveying title of the Midway property to the Providence Oil Company, and the Providence Oil Company executed a lease, containing conditions for forfeiture in case of noncompliance therewith, of a portion of this tract to one A. T. Jergins, whose right and interest therein was by successive assignments, transferred to the Midway Royal Petroleum Company, under which lease said company and its predecessors drilled an oil well upon the property and made expenditures thereon of upwards of fifty thousand dollars.

In 1909 an act was passed by the legislature (Stats. 1909, p. 454), providing terms and conditions under which corporations which had failed to pay their license-tax might be restored to their former rights. Plaintiff, upon ·compliance with these conditions, was, on November 22, 1909, rehabilitated in its right to conduct business in California. Thereupon plaintiff filed its complaint herein asking for a decree declaring that Spears and Potter held said Midway tract, lease of which had been made to the Providence Oil Company, in trust for plaintiff; that the deed made by Spears and Gilbane as managers of the Dabney Oil Company, purporting to convey the Midway tract to the Providence Oil Company, be declared void, and that plaintiff's title to both pieces of property be quieted; that an accounting be had as to all of said defendants, as well as for other relief; and thereafter, upon notice, applied to the court for the appointment of a receiver of all of the property, and for an injunction enjoining defendants from operating the same. Upon the hearing of this motion, upon the pleadings and affidavits filed, the court made an order appointing a receiver, who was directed to take possession of the net proceeds derived from the sale of oil produced upon the McKittrick district tract operated by the Providence Oil Company, and also the net proceeds derived from the sale of oil produced upon the Midway tract so leased by the Providence Oil Company to the Midway Royal Petroleum Company. It was further ordered that said Providence Oil Company, its officers, agents, attorneys, servants, and employees, and all persons, corporations, associations, or firms, holding any of the money, income, proceeds, and profits derived from the oil lands, either directly or indirectly, should, immediately upon production of the order, surrender into the possession of such receiver all of the said property referred to. It was further ordered that, in arriving at the net proceeds to be paid to the receiver, no salaries or compensation for services to the officers or directors of either the Providence Oil Company or the Midway Royal Petroleum Company, nor any expenses for drilling additional wells, should be allowed.

As appears from the complaint, the main purpose of the action is to recover possession of the oil lands and the title thereto, and to recover the fund derived by defendants from

the proceeds of the sale of oil alleged to have been wrongfully abstracted from the land.   The several answers, while admitting the salient facts, deny the practice of any fraud, and allege not only a ratification by plaintiff of defendants.' acts, but the answer of the Midway Royal Petroleum Company purports to set up matter of estoppel against plaintiff.   The pleadings and affidavits used at the hearing of the application for a receiver cover upwards of four hundred pages of printed matter, from a consideration of which the trial judge stated in a written opinion, copy of which is presented, that it was impossible to say on which side justice inclined.   Insolvency, of defendants was not alleged.   The lease to the Midway Royal Petroleum Company provided that its leasehold should be forfeited, unless it in good faith kept one string of tools in operation continuously until one well at least was drilled upon each ten acres of the demised tract. At the time of making the order only one well had been drilled.

Section 564 of the Code of Civil Procedure provides in what cases the court may appoint a receiver, and in the absence of facts showing that the case falls within some or more of the provisions of the section, no authority exists for such appointment.   Subdivision 6 of the section provides that a receiver may be appointed in all other cases than those mentioned in the preceding subdivisions where heretofore such practice had prevailed in courts of equity.   The provision of this subdivision, however, cannot be invoked in a case presented by a complaint which alleges facts bringing it within one of the preceding subdivisions.   Clearly, the case at bar is one falling within the provisions of subdivision 1 of the section, it being an action to recover property and a fund consisting of the proceeds derived from the operation thereof; hence the court had no power to appoint a receiver *pendente lite*, unless it was satisfied that the right of the plaintiff "in the property or fund, or the proceeds thereof, is probable," and also satisfied from the showing made "that the property or fund is in danger of being lost, removed, or materially injured."   Notwithstanding the expressed opinion of the court that it was impossible to determine upon which side justice inclined, we must assume, since every intendment is indulged in to support the judgment, that the court was satisfied that the right

of plaintiff to the property and fund which it seeks to recover, was probable. Conceding, but not deciding, that the record justifies such conclusion, it must further appear that the order made was necessary to protect the property from danger of being lost, removed, or materially injured, thus securing it to plaintiff in case of a judgment in its favor. As to the Midway Royal Petroleum Company, it appeared the Midway tract was held under a lease requiring it in good faith to continue drilling wells, subject to penalty of forfeiture, and the effect of the order was, without any bond being given, to enjoin it from using the proceeds of the sale of oil, over and above the actual cost of operating the one well, in the prosecution of work required by the terms of its lease, and this in the absence of any showing that it was insolvent or unable to respond in damages. The question as to whether a court may be justified in appointing a receiver to operate mining or oil property, in a proper case, is not involved. Such power may be conceded. We must assume, in view of the absence of any stipulation or order requiring the operation of the property, that the court did not deem such operation necessary to protect the rights of plaintiff, but left it optional with defendants to continue operation.

The sole and only purpose of the order, besides empowering the receiver to seek the recovery of moneys, profits, and income theretofore derived by defendants from the operation of the property, the recipients of which were ordered to pay it over to him, was to sequester the net income as therein defined by requiring defendants to pay it over to the receiver. Ignoring any hardship or injustice to defendant resulting from the wrongful tying up of the profits during years of litigation, if finally determined in defendants' favor, the desired purpose, which was to hold the net proceeds intact pending the suit, could have been obtained by an order granting an injunction whereby, upon the giving of a sufficient undertaking to protect defendants from damages, they should be restrained from paying out any proceeds from the sale of oil, other than for actual operation of the wells. The power to appoint a receiver is a delicate one and should be exercised with caution (*Roberts* v. *National Bank,* 9 Wash. 12, [37 Pac. 26]; High on Receivers, 4th ed., 289, 294), lest the injury thereby caused be greater than the injury sought to be averted. (*Heinze*

v. *Kleinschmidt,* 25 Mont. 89, [63 Pac. 927]; *Frostburg Building Assoc.* v. *Stark,* 47 Md. 338; *Devlin* v. *Hope,* 16 Abb. Pr. (N. Y.) 314.) ''The chancellor should so mould his order that while favoring one, injustice is not done to another, and if this cannot be accomplished the application should ordinarily be denied.'' (34 Cyc., p. 23.) And a receiver should not be appointed where the desired result can be obtained by less stringent means calculated to protect the rights of all parties. (*Hayes* v. *Jasper Land Co.,* 147 Ala. 340, [41 South. 909]; *Secord* v. *Wheeler Gold M. Co.,* 53 Wash. 620, [17 Ann. Cas. 914, 102 Pac. 654].) ''Where an injunction will protect all the rights to which the applicant for the appointment of a receiver appears to be entitled, a receiver will not be appointed.'' (34 Cyc., p. 25; *Hickey* v. *Parrott Silver etc. Co.,* 25 Mont. 164, [64 Pac. 330].)

If in the mind of the court the facts were insufficient to justify the issuance of an injunction restraining defendants from paying out the net proceeds of the operation of the property, much less could they be invoked as sufficient to support the more stringent order appointing a receiver to obtain a like result. At all events, it was an abuse of discretion on the part of the court to appoint a receiver, when the purpose sought could be accomplished and the rights of the parties more adequately protected by the granting of an injunction upon the giving of an undertaking required by statute.

We think the order appointing the receiver was inadvertently made, and it is therefore reversed.

Allen, P. J., and James, J., concurred.