[Civ. No. 17471.   Second Dist., Div. Three.   Oct. 23, 1950.]

W. E. McCASLIN, Appellant, v. E. B. KENNEY, Respondent.

Newby, Holder & Newby for Appellant.

Hibbard & Kleindienst and Charles E. Schaaf for Respondent.

WOOD (Parker), J.—In this action for dissolution of partnership and for an accounting, the plaintiff appeals from an order appointing a receiver.

The pleadings show that both parties desire the dissolution and accounting. At the time defendant filed his answer he also filed a notice of motion for appointment of a receiver. The determination of the motion was based upon the allegations of the amended complaint, the answer, affidavits, and testimony of plaintiff.

In January, 1939, the plaintiff and defendant entered into a written agreement of partnership wherein they recited that they acquired by assignment oil leasehold rights in certain producing oil wells, and wherein they agreed to associate themselves together as partners for the purpose of doing the things necessary and incident to the operation and maintenance of said properties, and wherein they agreed to divide the work between them as follows: plaintiff would supervise the operation of the wells, employ and direct the personnel, acquire the necessary equipment, and do all things to effect the maximum recovery from the wells; defendant would receive all money due the partnership, keep such books as he deems necessary to reflect the facts concerning partnership financial affairs, prepare all tax returns, and perform all duties usually performed by the treasurer and secretary of a business concern. It was also agreed therein that plaintiff would receive for his services $250 per month, and defendant would receive for his services $200 per month; the remaining net profits would be divided seven-eighths to plaintiff and one-eighth to defendant, payable monthly or at such other times as may be convenient; title to said properties and rights should remain in the individual partners as then owned by them, except that the title should be subject to the partnership rights as therein set forth; the partnership should continue for five years and so long thereafter as the partners might elect to continue it.

It was alleged in the amended complaint, among other things, that the partnership assets now consist of: interest in two producing oil wells known as Burge Well and Hurlburt Well No. 1; 32½ per cent of royalty interest in Miller 1A Well operated by the Invader Oil Company; approximately $29,367.87 on deposit in a bank; and "checks of the firm" in defendant's possession, drawn by Standard Oil Company, aggregating the sum of $5,366.78 which should have been deposited by defendant in the firm bank account. It was also

alleged therein that five checks aggregating $9,940.35, drawn by Ben Hur Refining Corporation, for oil sold to that corporation by said firm, were delivered to defendant on or about the dates the checks were issued (various dates from September 15, 1948, to March 11, 1949), for deposit in the firm bank account, but defendant retained the checks in his possession; that on April 11, 1949, plaintiff discovered that said checks had not been deposited or presented for payment, and he (plaintiff) requested the drawer of the checks to stop payment thereon and issue a new check for said sum of $9,940.35; the request was granted and a check for said sum was delivered by said corporation to plaintiff who deposited it in the firm bank account on April 20, 1949. It was also alleged therein that defendant received checks from Standard Oil Company in payment of the partnership royalty interest in oil sold by the Invader Oil Company, aggregating said sum of $5,366.78, which checks were issued upon various dates from July 14, 1948, to February 11, 1949; none of said checks had been deposited in the firm bank account on May 16, 1949 (the amended complaint was filed on May 21, 1949); other persons had acquired royalty interests in said wells operated by said partnership, and that defendant, in order to depress the purchase price thereof, had refused to mail to an absent owner of a royalty interest the amount due to her; defendant had made secret profits in the purchase of certain of those royalty interests; defendant refuses to keep the books or to sign checks for the partnership.

Defendant, in his answer, admitted that said checks issued by the Ben Hur Refining Corporation, aggregating $9,940.35, were delivered to him about the dates they were issued and that he did not deposit them immediately. He alleged therein that said lack of deposit was at all times known to plaintiff, and that the checks were not deposited for the reason that plaintiff refused to sign royalty checks as prepared by defendant. He also admitted therein that he received said checks issued by Standard Oil Company, aggregating $5,366.78, and he alleged, in part, that said checks have now been deposited by defendant in the firm bank account; that plaintiff knew at all times that the checks had not been deposited and that the reason therefor was the refusal of plaintiff to sign checks for the payment of royalties to others. He denied that he had made secret profits in the purchase of royalty interests in the partnership. He alleged further that plaintiff had refused to keep

proper production records and to supply them to defendant; plaintiff, in violation of his partnership agreement, had disposed of certain assets of the partnership; plaintiff had received bonuses or commissions from certain refining companies on account of oil delivered to them and has not accounted therefor to the partnership.

Defendant's affidavit, in support of his application for a receiver, was in substance as follows: that plaintiff had the duty of supervising and operating the oil wells, employing and directing the necessary personnel, and doing all other things to effect the maximum recovery from the wells as efficiently as possible; plaintiff is 79 years of age and is no longer physically or mentally able to supervise and conduct the oil producing activities of the partnership; that during the week ending July 9, 1949, plaintiff caused to be installed in Hurlburt Well No. 1 new pumping equipment; that ''in starting up the equipment'' the plaintiff, by reason of his age and inefficiency, neglected to open the pipeline between the outlet of the well and the production tank and that by reason thereof a large number of barrels of oil ''were lost'' and sprayed over the derrick, other equipment, and the highway, causing a serious and dangerous traffic hazard; it is necessary for the preservation of the physical properties of the partnership that a receiver be appointed.

Plaintiff's affidavit, in opposition to said application, recited that it is not true that plaintiff is physically or mentally unable to supervise and conduct the oil producing activities of said partnership; the work to be done on the Hurlburt well, referred to in defendant's affidavit, was approved by defendant before any work was commenced and plaintiff employed Mr. Beene, an expert oil man, to perform the work and he did perform the work in a skillful manner; the act resulting in the scattering of oil, referred to by defendant, did not occur while affiant was present, but he did inspect the property shortly thereafter, and it is not true that any oil was sprayed over the highway or that a serious or dangerous traffic hazard was occasioned by the accident; the spray consisted almost entirely of water; the volume of water and oil escaping from the broken pipe remained on the oil well property and was ''pumped up,'' and all the oil on the surface of the water was recovered; the accident was not the result of negligence but was caused by the deterioration of the pipe ''through which said fluid had been flowing many years''; plaintiff has been engaged in the oil production business for 27 years and is

now entirely competent and willing to perform all the duties required of him by the partnership agreement; the plaintiff is the owner of seven-eighths of the assets, and the appointment of a receiver is not only unnecessary but would involve a burdensome expense to plaintiff; the defendant acquired his one-eighth interest as a gift from plaintiff.

An affidavit of Mr. Estes, filed by plaintiff, recited that in the early part of July, 1949, he was employed by plaintiff to remove some fluid, "consisting mostly of water and a small quantity of oil," from the ground surrounding the Hurlburt well, and he removed it by pumping it into a truck tank; the derrick had been sprayed with a small quantity of oil and there was "a thin scum of oil on the fluid" surrounding the derrick which fluid was retained by a wall; the oil removed at said time did not exceed three or four barrels; there was no oil on the highway, and he saw no evidence of a dangerous or serious traffic hazard resulting from escaping oil; he has known plaintiff for many years and plaintiff has the reputation of being an expert in drilling and producing oil wells and is competent to superintend the production activities of the firm.

An affidavit of Mr. Wise, filed by plaintiff, recited that he assisted in replacing oil pipe on the Hurlburt well in the early part of July, 1949; that old pipe was broken while the repair work was being done and had to be replaced because it had deteriorated from use; during said repairing by W. H. Beene a small quantity of oil and water sprayed over the derrick and surrounding ground but none reached the highway and no traffic hazard resulted from the incident; all the fluid escaping from a leaking stuffing box and the broken pipe was pumped into a tank truck and removed by Mr. Estes, and no oil was wasted; affiant has known plaintiff for many years and plaintiff has the reputation of being an expert in drilling and producing oil wells and is competent to superintend the production activities of the firm.

An affidavit of Mr. Shreves, filed by plaintiff, recited that he has been employed by plaintiff, from time to time, "to oil the two wells" known as the Hurlburt No. 1 and the Burge; that in the early part of July, 1949, he discovered that the stuffing box at the Hurlburt well was leaking, and plaintiff instructed him to repack it and he did repack it forthwith; such leaks are of common occurrence and they indicate no lack of intelligence in installation or production; when he inspected the premises there was no oil on the highway and very little

oil had escaped; he has known plaintiff for many years and plaintiff is a highly competent oil producer and is not lacking in physical or mental power necessary for the supervision of the production activities of the oil properties of the firm.

An affidavit of Mr. Novelli, filed by plaintiff, recited that he is president and general manager of Ben Hur Refining Corporation; that in the course of his employment he has dealt with plaintiff in negotiating for the purchase of crude oil produced by said partnership, and that he is convinced of plaintiff's "better than average business ability in these negotiations"; he values plaintiff's experience and knowledge "in producing and drilling petroleum wells" to the extent that he has used and would use him as a consultant on drilling and producing problems; he has known plaintiff 16 years and has observed no decline mentally, or any other condition, which would make him less capable of conducting any of the petroleum activities of the partnership.

An affidavit of Mr. Beene, dated July 22, 1949, which was filed by plaintiff, recited that he is a builder of oil well rigs and he performed work on the Hurlburt well in the early part of July, 1949, in a skillful manner under the supervision of plaintiff; while plaintiff was temporarily absent from the premises affiant "started the pumping" of the well, and the stuffing box leaked and a small quantity of oil and water was sprayed over the derrick and the ground, but no oil was sprayed over the highway; while the work was being done a pipeline broke but no appreciable amount of oil escaped and all fluid that was on the ground was removed by Mr. Estes; no negligence occurred while the work was being done; plaintiff indicated no lack of physical or mental power during that time; he has known plaintiff for many years and plaintiff is competent to supervise the oil wells owned by the partnership.

An affidavit of Mr. Beene, dated July 28, 1949, which was filed by defendant, recited that he is the same Mr. Beene who made the affidavit of July 22d, and that he did not read the first affidavit in its entirety but relied upon the statement of plaintiff as to what it contained; that certain statements therein are not in accordance with the facts; that while the work was being done the plaintiff was present for periods varying from two to four hours each day; it is not true that while plaintiff was temporarily absent the affiant started the pumping of the well; after the work was completed, the affiant, upon instructions from plaintiff called Mr. Harmer whose business is that of installing motive power for pumping oil

wells; that Harmer endeavored to start the pumping equipment but it could not be started during the time affiant remained at the well; when affiant left the well about 3 p.m. the pumping equipment had not been started, and Harmer said he would return the next morning; affiant passed the well about 8 p.m. of the same day and the pump was operating, the stuffing box was leaking, the spray was going over the derrick and a light amount of spray was going over the highway; a considerable amount of fluid was "running out under the derrick" from a broken pipe; if the pump had continued for an additional half hour, fluid consisting of oil and water would have run over the highway; affiant stopped the pump and notified plaintiff as to what he had discovered; affiant does not know who "pumped up any oil and water wasted."

Plaintiff testified that in the first week in July, 1949, he told Mr. Beene, a rig builder, that he thought the machinery at the well was very dangerous; he asked Mr. Beene to "look that over" and to "shut the well down" if he (Beene) thought it was dangerous; later that day Mr. Beene told plaintiff he had stopped the pump; he and the defendant bought "a gear box unit" and employed Mr. Beene to install it in place of the old machinery; in doing the work a water pipeline which extended from the "wash tank" was disturbed, and a lot of water "and what little scum of oil was there" leaked over the ground, but it was retained in the enclosure which was formed by "a concrete wall around the lease"; the stuffing box leaked and oil was thrown over the derrick, but no oil reached the highway "or anyways near it; must have been at least 25 feet from the highway"; the stuffing box was tightened and there was no more leaking; the fluid in the enclosure was removed by use of a pump truck.

While plaintiff was a witness, Mr. Newby, one of the attorneys for plaintiff, requested the trial judge to satisfy himself by interrogating the plaintiff that plaintiff is not mentally or physically incapable of operating the wells. The judge replied: "The point I have in mind, Mr. Newby, in not examining him is I will assume that plaintiff is perfectly competent to operate these wells, and that he is competent in all other respects. That is the presumption to which he is entitled; but I don't think that is the answer to the problem. The answer to the problem is that here are two men who are in disagreement. They can't get along any more. They have been partners. . . . I cannot see why under those circumstances it

isn't appropriate for the Court to appoint a receiver." Later the attorney asked the judge if he cared to interrogate plaintiff. The judge replied: "No. As I say, I am willing to go on the presumption that he is thoroughly competent in every respect, but that isn't the issue."

Appellant asserts that the affidavit of defendant was insufficient to justify the appointment of a receiver. That affidavit recites in substance, as above shown, that plaintiff is not physically or mentally able to supervise the oil producing activities of the partnership and by reason thereof a large number of barrels of oil had been lost and sprayed over the highway. Defendant's conclusion that plaintiff was incompetent was not sustained by the trial court. The judge declared, as above shown, that plaintiff was "perfectly" and "thoroughly" competent. Defendant's charge in his affidavit that plaintiff was negligent cannot be a factual basis for a finding of negligence on the part of plaintiff. It is not asserted in the affidavit or otherwise that defendant was present when the alleged negligence occurred. The other affidavit filed by defendant (the second affidavit of Mr. Beene) shows that Mr. Beene was not present when the pumping equipment was put in operation or when the stuffing box started to leak or when the pipe broke. There is no allegation in either of said affidavits that plaintiff said in defendant's presence, or at all, that he (plaintiff) neglected to open the pipeline, or that he said he did not open the pipeline. ▇ Under such circumstances, the statements in the affidavits are not competent evidence of the alleged negligence, and the affidavits are insufficient to prove negligence. (See *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 170 [195 P.2d 416]; *Sitkei* v. *Frimel*, 85 Cal.App.2d 335, 338 [192 P.2d 820].) In such an application the facts allegedly supporting the conclusions of the affiant must be based upon the knowledge of the affiant. (See *Bank of America* v. *Williams*, 89 Cal.App.2d 21, 23, 24 [200 P.2d 151].) The affidavits filed by plaintiff and plaintiff's testimony are sufficient to prove that plaintiff was not negligent.

In section 564 of the Code of Civil Procedure it is provided that: "A receiver may be appointed . . . 1. In an action . . . between partners . . . on the application of . . . any party whose right to or interest in the property . . . is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured." There was no proof herein that the property is in danger of being lost or removed or materially injured.

It appears, from remarks of the trial judge, that the basis for the order appointing a receiver was that the judge was of the opinion that if a partner requests the appointment of a receiver, in an action for dissolution of a partnership, a receiver should be appointed. The judge said there are cases in other jurisdictions "that hold that in connection with the dissolution of a partnership the partner requesting a receiver is entitled to one." He also said: "There is a Supreme Court of the United States case . . . which holds absolutely that where a partner is entitled to a dissolution, he is also entitled to a receiver." He also said: "Why should one partner in dissolution proceedings permit the other partner to go ahead and run the business? It is just one of the things that as a rule isn't done." The mere fact that a partner requests the appointment of a receiver, in an action for dissolution of partnership, is not a sufficient basis to justify such an appointment. In *Dabney Oil Co.* v. *Providence Oil Co.*, 22 Cal.App. 233, it was said at page 237 [133 P. 1155] : "Section 564 of the Code of Civil Procedure provides in what cases the court may appoint a receiver, and in the absence of facts showing that the case falls within some [one] or more of the provisions of the section, no authority exists for such appointment. . . . Clearly, the case at bar is one falling within the provisions of subdivision 1 of the section . . . hence the court had no power to appoint a receiver *pendente lite,* unless it was satisfied that the right of the plaintiff 'in the property or fund, or the proceeds thereof, is probable,' and also satisfied from the showing made 'that the property or fund is in danger of being lost, removed, or materially injured.' " A receiver should not have been appointed herein.

Appellant contends further that there was no legal basis for the injunction, contained in the order appealed from, to the effect that the parties are restrained "from withdrawing any portion of the sum of $30,000.00 to be left in the bank account of the said co-partnership." Neither party asked for such a restraining order. Respondent argues that his application for appointment of a receiver was a sufficient legal basis for the order; and that, in any event, the parties had agreed in effect that the partnership should retain $30,000 of its bank account. Statements were made by the attorneys for the parties to the effect that $30,000 of the money in the bank should be excluded from the receivership to avoid the expense of the receiver in accounting for the $30,000—it appearing, from

the partnership agreement, that no money could be withdrawn from the bank without the signatures of both parties on a check. Before said statements were made the judge had indicated that a receiver would be appointed. The statements of the attorneys are not to be interpreted as constituting an agreement that an injunction should be ordered, but they are to be interpreted as an agreement that $30,000 of the money in the bank should not be included in the assets of the proposed receivership. The restraining order should not have been made.

The order appointing a receiver, and the order restraining the parties from withdrawing the $30,000, are reversed.

Shinn, P. J., and Vallée, J., concurred.