[No. 7850.   Decided June 22, 1909.]

B. C. SECORD et al., *Respondents*, v. WHEELER GOLD MINING COMPANY et al., *Appellants*.[1]

CORPORATIONS—RECEIVERS—INSOLVENCY—EVIDENCE. In an application for the appointment of a receiver, a corporation is conclusively shown to be solvent where it appears that its mines had cost $40,000 and were worth $50,000 and were producing seven tons of ore per day at a net profit of $4 per ton, and the total indebtedness of the company was about $4,000.

SAME—RECEIVERS—MISMANAGEMENT—NECESSITY—EVIDENCE—SUFFICIENCY. Mismanagement of a corporation, entitling stockholders to the appointment of a receiver, is not shown by the fact that a director was allowed a salary as manager (the by-laws only prohibiting the payment of compensation to directors as such), that his traveling expenses were allowed, that for convenience the books were removed to another state where all the property was located, that a small *bona fide* debt to the wife of the president was not shown in all the semi-annual statements (it appearing on the books), or that stockholders inquiring at the main office were not furnished all the information desired; since absolute necessity must be shown by clear evidence, and mere carelessness, mistakes or bad policy honestly pursued is not sufficient.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered October 27, 1908, in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action by minority stockholders of a corporation for the appointment of a receiver. Reversed.

[1]Reported in 102 Pac. 654.

*Happy & Hindman*, for appellants.

*Samuel R. Stern*, for respondents.

Mount, J.—Respondents brought this action as minority stockholders in the appellant corporation, alleging the insolvency of the corporation, and, also, that the trustees. named as defendants have been guilty of negligence and mismanagement of the affairs of the corporation; and prayed for the appointment of a receiver thereof to take charge of the books, accounts, and property of the corporation. The appellants answered, denying all the allegations of the complaint relative to negligence, mismanagement, and insolvency. The cause was tried to the court and, at the conclusion of the trial, a receiver was appointed as prayed for. No findings of fact were made. The appeal is prosecuted from the judgment appointing a receiver.

We have examined the evidence in the case and are satisfied that there is no good reason for the appointment of a receiver, and that the court abused its discretion therein. The appellant Wheeler Gold Mining Company is a Washington corporation, with its principal office in Spokane. It owns. certain mines in the state of California. All its business, except the annual meetings of the stockholders, is conducted in California. The office of the secretary and the books and papers of the corporation had been kept in San Francisco. for about a year prior to the commencement of the action. In short, all the property of the corporation is located in California, except that the secretary's books were brought to, Spokane for the regular annual meeting of the stockholders, about the time this action was begun. The evidence conclusively shows that, at the time of the trial, the mines, together with the development work and machinery thereon, had cost the company more than $40,000. These mines were estimated to be worth at least $50,000, and at that time the. mines were being operated and were producing between six and seven tons of ore per day at a net profit of $4 per ton.

The total indebtedness of the company was about $4,000. The creditors were not making any complaint. These facts show conclusively that the corporation is solvent. In fact, there is no evidence in the record to the contrary.

In regard to mismanagement and negligence of the officers, the proof shows that the president, Mr. Jacobs, was one of the three trustees. He was the active head of the company and the manager of the work at the mines. In December, 1907, he notified the other two trustees that he would expect a salary of $100 per month after January 1, 1908, as manager of the mines. This was approved by the other two trustees. The by-laws provide that:

"The members of the board of trustees shall receive no compensation for their services as such; nor shall the company pay for any services rendered except as so expressly provided."

The evidence also shows that Mr. Jacobs made two trips from San Francisco to Spokane to attend stockholders' meetings of the company, and credited his account with $250 for expenses of such trips. It was also shown that the secretary's office and the books and papers were removed from Spokane, Washington, the main office of the company, to San Francisco, California, by order of the trustees, for the convenience of the company's business; and it is shown that the company is indebted to Mrs. Jacobs, the wife of the president of the company, in the sum of $3,680, which indebtedness was not shown on all of the semi-annual statements issued by the secretary, and the fact of this indebtedness was not known to the stockholders. But the evidence shows that this is a *bona fide* debt. It is shown that certain stockholders, upon inquiring at the main office, were not furnished with all the information they desired, and did not obtain copies of the by-laws when demanded. We are satisfied that none of these things above mentioned constitute mismanagement sufficient to justify the appointment of a receiver of a solvent corporation.

It is not clear that the president of the company, when acting as manager of the mines, is not entitled to a salary and expenses, especially when the board of directors authorizes the payment thereof. The by-laws are certainly capable of that construction. The books and papers were removed to San Francisco in good faith, by the trustees, for the purpose of facilitating the business of the company, and not for the purpose of fraudulently putting them out of this jurisdiction, or of preventing local stockholders from examining them. The debt owing to Mrs. Jacobs seems to be a *bona fide* debt, and seems also to have been regularly carried upon the books where the status of the debt is shown; and the fact that this item was not shown by the reports, while this may have been an indication of carelessness, was not sufficient to show that a receiver was necessary for the company. The same is, of course, true with relation to the demand for copies of the by-laws.

But, assuming for the purposes of this case that all the things above stated were wrong and beyond the authority of the directors, who were careless and guilty of mismanagement therein, still, under the well-settled rules of law, the court would not be authorized to appoint a receiver of the corporation. The rule is clearly stated in Alderson on Receivers, beginning at page 490, as follows:

"Before a court will take charge of a corporation and thus displace its chosen directors and managers, it ought to have the clearest evidence of the absolute necessity for such extraordinary caution for the protection of the creditors, stockholders and all parties concerned. The power to wrest the property of a corporation from the management of the directors and officers should never be doubtingly exercised. The power of appointing a receiver is a discretionary one to be exercised with great circumspection and only in cases where there is fraud, spoliation, or imminent danger of the loss of the property if the immediate possession should not be taken by the court; and such facts must be clearly proved. The policy of the law is to leave the affairs of corporate

bodies to the management and control of their own chosen
agents and a minority of stockholders will not be permitted
to displace corporate authority and control of the courts, ex-
cept in plain cases of such fraud or maladministration as
works manifest oppression or wrong to them.  The necessity
of and right to the appointment of a receiver must be free
from reasonable doubt to justify the court in granting the
application.  So long as the directors keep within the scope
of their powers and act in good faith and with honest mo-
tives, their acts are not subject to judicial control or revi-
sion.  And where the controversy is a question of mere dis-
cretion in the management of the corporate business, or of
doubt in accomplishing the purpose for which the corpora-
tion was organized, the remedy by appointment of a receiver
will be denied.  It is the rule that courts of equity will not, at
the suit of a stockholder, resort to the extreme remedy of
taking the property out of the hands of the managers elected
by the stockholders, except as a last resort, and when con-
sidered to be absolutely necessary for the preservation of
the trust fund. . . .    The appointment of a receiver of
a solvent corporation on the application of a minority of
the stockholders is a very drastic remedy, which could be
justified only in a very strong case. . . .    Another mat-
ter to be considered in proceedings by stockholders for the
appointment of a receiver of the corporation is the require-
ment of the law that they should have first made every rea-
sonable effort to secure redress and prevention of the threat-
ened mischief within the company itself.  Until it is shown
that every reasonable effort to obtain redress through the
regularly constituted agents and controlling power of the
corporation has proved unavailing, a stockholder cannot sue
in his own name alone, nor on behalf of himself and other
stockholders for the appointment of a receiver."

And in 23 Am. & Eng. Ency. Law (2d ed.), p. 1023, the
rule is stated as follows:

"The subject of the appointment of a receiver for a cor-
poration on the ground of misconduct of officers or directors
has given rise to much apparent conflict in the cases.  But
however much the decisions seem to differ on the particular
facts, the rule generally recognized is that a corporation will
be placed in the hands of a receiver for the misconduct of its

officers or directors only when necessary to preserve the property or rights of creditors or stockholders. The mere misconduct of officers of a corporation is not sufficient ground for the appointment of a receiver, as a court of equity may forbid the misconduct or remove the officer from his position."

The cases cited by respondents are not in point in this case. The case of *Cameron v. Groveland Imp. Co.*, 20 Wash. 169, 54 Pac. 1128, 72 Am. St. 26, is a case where the officers were guilty of fraud and "that by reason of such fraud the corporation was in imminent danger of insolvency . . . and that plaintiffs had no relief except in equity." The case of *New York Nat. Exchange Bank v. Metropolitan Sav. Bank*, 28 Wash. 553, 68 Pac. 905, was one where the corporation was confessed to be insolvent, and was dissolved. No such facts as existed in the two cases above cited are presented in this case. The corporation here is neither insolvent nor in imminent danger of insolvency, nor is there any likelihood of the property of the corporation being lost to the stockholders or creditors, through fraud or collusion of its officers, or through mismanagement or waste. It is apparent from the complaint and the proof in the case that a minority of the stockholders were dissatisfied with the management of the corporation by the majority stockholders, by reason of certain assessments on the capital stock of the company; and inasmuch as an election of trustees was about to take place and the control of the corporation would evidently remain with the old board, this action was instituted for the appointment of a receiver. As stated above, the policy of the corporation, if honestly conducted, must be controlled by the majority of the stockholders. Mistakes, inadvertence, or bad policy, if honestly pursued, will not warrant the appointment of a receiver. Courts will not interfere except in case of fraud or the infringement of legal acts which cannot be otherwise redressed.

We find no justification for the appointment of a receiver

40—53 WASH.

in this case.   The order is therefore reversed, with directions to the lower court to dismiss the action.

Rudkin, C. J., Dunbar, Crow, Fullerton, Gose, and Chadwick, JJ., concur.