[S. F. No. 11682. In Bank.—August 7, 1925.]

A. G. COL COMPANY (a Corporation) et al., Petitioners,
v. THE SUPERIOR COURT OF THE COUNTY OF
SANTA CLARA et al., Respondents.

[1] Receivers—Prohibition—Remedies—Jurisdiction.—Where the en-
tire record concerning the appointment of a receiver *ex parte* and
after a hearing is placed before the supreme court in a proceeding
to prevent further proceedings in the trial court, it is competent,
notwithstanding the fact that a writ of prohibition is prayed, that
the supreme court review the entire proceedings, and grant such
relief as may be proper in the premises.

[2] Id.—Corporations—Ex Parte Order Appointing Receiver—When
Justified.—From the standpoint of the business welfare of a
defendant corporation, the appointment of a receiver on an *ex
parte* application is so dangerous an expedient that it should be
done only in cases of the greatest emergency and where, without
such appointment, irreparable injury will unquestionably result.

[3] Id.—Availability of Less Drastic Remedy.—A receiver should
not be appointed where a remedy less drastic in its nature and
scope is available, and which will insure to the litigants adequate
protection.

[4] Id.—Pleading—Injunction—Remedies.—Where a complaint by a
corporation, which alleged the purchase, through certain of its
officers, of the stock and assets of one of the corporations defend-
ant and the wrongful conversion thereof, prayed that it be decreed
that the property was held in trust by the defendants for the
benefit of the plaintiff; that an accounting be had, and that the
stock be delivered to the plaintiff, every presumed right (other
than the appointment of a receiver) of the plaintiff corporation,
for which it prayed in its complaint, could have been fully and
completely protected and made available by a writ of injunction,
or by other remedies provided by statute.

[5] Id. — Insolvency of Corporation — Pleading. — Before the court
would have been justified in making an *ex parte* order appointing
a receiver of corporations defendant on the ground of "imminent
danger of insolvency" as provided by section 564 of the Code of

1.   See 22 R. C. L. 32.
2.   See 22 Cal. Jur. 466; 23 R. C. L. 38.
3.   See 22 Cal. Jur. 437.
4.   See 7 Cal. Jur. 186.

Civil Procedure, it must have appeared by appropriate allegations in the complaint that the financial condition of the corporations defendant was such that they were "in imminent danger of insolvency."

[6] Id. — Pleading — Corporation "in Imminent Danger of Insolvency"—Insufficient Allegation.—An allegation in a complaint, made on information and belief, that a corporation defendant is "in imminent danger of insolvency," is entitled to little weight; but, even assuming that its capacity as a pleading is not affected by the fact that it is made on information and belief, nevertheless the allegation is insufficient.

[7] Id.—Motion to Vacate Ex Parte Order Appointing Receiver—Corporations—Insolvency—Evidence.—In this proceeding involving the legality of the action of a trial court in appointing a receiver of a defendant corporation after a hearing upon a motion to vacate an *ex parte* order appointing a receiver, aside from any question of the sufficiency of the complaint, the facts adduced on the hearing of the motion to vacate the *ex parte* order were not sufficient to sustain the necessary conclusion by the court that said corporation defendant was "in imminent danger of insolvency."

[8] Id.—Consent to Appointment of Receiver—Record—Certiorari—Jurisdiction.—In such proceeding, the supreme court, in reference to the question whether or not the corporations defendant consented to the appointment of a party, who was a stockholder in the plaintiff corporation, as receiver, is authorized to review the entire record, as on *certiorari*, and determine for itself just what situation was presented to the trial court, and to award such relief as may be proper in the premises.

[9] Id.—Absence of Consent—Evidence—Want of Jurisdiction in Appointing Receiver.—In such proceeding, it is held, after a review of the record, that neither "the written consent of the parties, filed with the clerk," as provided by section 566 of the Code of Civil Procedure, nor the oral consent of the defendants (assuming, without deciding, that oral consent would have been sufficient), was obtained to the appointment, as receiver, of a party who was a stockholder in the plaintiff corporation, and that the trial court was, therefore, without jurisdiction to make the appointment.

[10] Id.—Prohibition—Remedies.—In this proceeding to prevent further proceedings in reference to the appointment of a receiver *ex parte* and after a hearing, the remedy by writ of prohibition

9.   See 22 Cal. Jur. 458.

10.   See 22 Cal. Jur. 481.

is held to be available to the petitioners, notwithstanding that they had a remedy by appeal from the orders appointing a receiver *ex parte* and after a hearing.

(1) 32 Cyc., p. 630, n. 6.   (2) 34 Cyc., p. 117, n. 79, p. 122, n. 97. (3) 34 Cyc., p. 23, n. 50.   (4) 34 Cyc., p. 26, n. 60.   (5) 34 Cyc., p. 112, n. 44.   (6) 34 Cyc., p. 112, n. 44.   (7) 34 Cyc., p. 132, n. 46.   (8) 32 Cyc., p. 629, n. 1.   (9) 34 Cyc., p. 142, n. 93.   (10) 32 Cyc., p. 619, n. 25.

PROCEEDING in Prohibition involving the legality of an order of the Superior Court of Santa Clara County appointing a receiver *ex parte,* and of an order appointing a receiver after hearing. **J. R. Welch, Judge.** Orders annulled.

The facts are stated in the opinion of the court.

Simeon E. Sheffey for Petitioners.

W. E. Foley, N. E. Wretman and Maurice J. Rankin for Respondents.

HOUSER, J., *pro tem.*—The matter which is here presented for determination by this court purports to be a petition for a writ of prohibition. Through some inadvertence, an order to show cause why an ''alternative writ of prohibition should not issue'' was served upon the respondents. In view of the fact, however, that throughout the hearing the understanding of both the petitioners and the respondents has been shown to have been that the proceeding be treated as final in its nature, such intention will receive recognition and indorsement by this tribunal. The salient facts relating to the controversy appear to be as follows:

For a number of years next preceding the date of the filing of the petition herein, A. G. Col Company has been engaged in the wholesale produce business at the city of San Jose. On or about November 23, 1923, the corporation known as A. G. Col Incorporated was organized by the stockholders of the A. G. Col Company for the purpose of taking over the business of the A. G. Col Company, and which act seems to have been accomplished.

A corporation known as the California Sweet Potato Corporation, in which A. G. Col and J. P. Napoli were stock-

holders, filed a suit against L. E. Bontz, the A. G. Col Company, A. G. Col Incorporated, and several of the officers, directors and stockholders thereof, in which it was alleged that from April 24, 1922, to May 4, 1923, defendants therein, L. E. Bontz, C. W. Hunt, and one R. A. Bronson, were the directors of the plaintiff California Sweet Potato Corporation, and that during said time L. E. Bontz was the president, R. K. Bontz was the secretary, and C. W. Hunt was the vice-president thereof; that on or about August 22, 1922, the said officers, with the exception of said R. A. Bronson, purchased all the capital stock and all the assets of the A. G. Col Company; that in payment therefor the said defendants issued capital stock of the plaintiff therein, California Sweet Potato Corporation, and "wrongfully and without any right converted the same [presumably the stock and assets of the A. G. Col Company] to their own use and took possession of said property"—which act on the part of said last-named defendants, on information and belief, is alleged by said plaintiff to have been done pursuant to a conspiracy among said defendants to defraud said plaintiff of said property. The complaint contained the further allegation that the organization of the A. G. Col Company Incorporated was without any authority from the plaintiff, or any consideration paid to it therefor, but was brought about for the purpose of cheating the plaintiff of its said property. On information and belief, the plaintiff also alleged in its complaint that the said defendants had threatened to sell and dispose of all of said property and had encumbered the same "to the extent of $20,000.00 and upwards," and that unless restrained by an order of court, the defendants would sell the property or further encumber the same, and make it impossible for the plaintiff to secure possession and control thereof in as good condition as it was at the time said suit was filed against the said defendants,—to the damage of the plaintiff in an amount impossible of calculation,—and that it was necessary "that a receiver be appointed to take charge of and manage the said Wholesale Fruit & Produce, Warehouse & Commission business in order to properly preserve and protect the rights and interests of this plaintiff." It was further alleged in said complaint, on information and belief, that the defendant therein "A. G. Col Company Inc. never had, or possessed any real capital or assets and is a dummy organiza-

tion used by the individual defendants herein for the purpose of concealing their operations and *that said corporation is in imminent danger of insolvency.*'' The complaint also contained a direct allegation that said individual defendants, when they were officers of the plaintiff, California Sweet Potato Corporation, did not keep proper books of account, and did not account, in cash or property, for a large amount of the capital stock of the said plaintiff, which, on information and belief, is alleged to be of the value of $60,000, and of which sum each of said individual defendants was alleged to be a beneficiary; also, that the facts as set forth in the complaint were not discovered by the present officers of the plaintiff corporation until the month of April, 1925. The prayer was that it be adjudged that defendants hold the property in trust for the plaintiff; that an accounting be had; that a receiver of the said ''Wholesale Fruit & Produce, Warehouse & Commission business'' be appointed; that the defendants be restrained and enjoined from disposing of said property, or encumbering the title thereto; that the stock of the A. G. Col Company and all property owned by it on August 22, 1922, be delivered by the defendants to the plaintiff; and for general relief.

It further appears that after said complaint was filed, on application of the plaintiff therein, the respondent herein, the Superior Court, issued an *ex parte* order appointing A. G. Col receiver in said suit, based solely upon the said complaint and an affidavit of N. E. Wretman, one of the attorneys of record for the plaintiff, and who was assistant secretary of the plaintiff therein, in which affidavit was recited the fact of service of the complaint and the summons in said suit upon each of the defendants therein, and, in addition thereto, the statement, upon information and belief of the affiant, that after such service had been had the defendants in said suit were not managing and conducting the business and enterprise referred to in said complaint in the usual and ordinary manner, in that they were collecting all outstanding accounts, and were ''converting most of the goods, wares and merchandise on hand into cash with a view to disposing of same in such a manner as not to be within the reach of a permanent receiver when appointed after the hearing of said motion''; that, in and by said order of said Superior Court, said receiver was vested with all the usual

powers and rights of receivers, including the power to take, care for, and keep possession of the property, books of account, books and papers relating to said enterprise; and that thereupon the said receiver qualified as such officer and immediately took charge and possession ·of the business of the corporation defendants.

Within two days after said *ex parte* order by the respondent Superior Court appointing said receiver had been made, the defendants in the suit made application to the said Superior Court for an *ex parte* order setting aside the said *ex parte* order appointing a receiver therein, which application was by the court refused and denied; but, at the same time an order was made by the court shortening time for service of notice of a motion for an order to set aside said *ex parte* order by which the receiver had been appointed, and fixing the time for the hearing of such motion at 2 o'clock P. M. of the same day on which the application for the order setting aside the *ex parte* order appointing the receiver had been denied.

At the hearing of said motion evidence was received of certain facts, including the following: J. C. Jewett, who was the manager of the defendant A. G. Col Company, and the defendant A. G. Col Incorporated, made affidavit and therein specifically denied each of the allegations contained in the affidavit of N. E. Wretman, to which reference heretofore has been had; and especially denied in said affidavit that said corporations were, or that either of them was, collecting all the accounts and converting most of the goods, etc., into cash with a view of disposing of the same in such manner as not to be within the reach of a receiver. Affiant further deposed that the said business was being conducted in an efficient, honest, and highly successful manner; that the nature of the business demanded that its perishable assets be converted daily into cash, which was done, and that the moneys so received were daily deposited to the credit of A. G. Col Incorporated in a bank in the said city of San Jose, and drawn out solely for necessary purposes in the conduct of the business.

The said affidavit contained further specific denials of each of the allegations set forth in the complaint in said suit, including denials to the effect that the defendant A. G. Col Incorporated never had or possessed any real capital or

assets; that it was a "dummy corporation," etc., or that it was "in imminent danger of insolvency"; denied the existence of the or any conspiracy, as alleged in the complaint, or at all; denied that the defendants, or either of them, had converted to their or his personal use any of the property referred to in the complaint, other than such as "they were justly, legally and equitably entitled to convert the same to"; denied that any of the defendants kept secret any transactions relating to the purchase of the property described in the complaint, but asserted that full knowledge thereof was had by "all parties," and that the plaintiff California Sweet Potato Corporation never had any interest whatsoever in said property; denied that the issuance of the capital stock of the plaintiff corporation [in the matter of the purchase of the A. G. Col Company] was unauthorized, or that said capital stock was converted by the defendants to their own use; but, to the contrary, alleged that said plaintiff received payment therefor in the sum of $40,000, in accordance with the terms of a certain agreement [a copy of which being attached to said affidavit and made a part thereof]; and which agreement, although not entirely clear in all its terms, is evidence of knowledge by the plaintiff corporation of the facts surrounding the transaction and of the plaintiff's participation therein.

The said affiant further deposed in substance that all the operations of said A. G. Col Incorporated were regular in all respects; that as to its financial condition, it was wholly solvent and able to meet its just obligations as fast as they matured; and that it was not *"in imminent danger of insolvency,* or in danger of insolvency at all."

At the hearing, the affidavit of Simeon E. Sheffey, attorney representing the defendants, was also received in evidence. Among other things, it appeared therefrom that the certificate of 200 shares of the capital stock of the plaintiff, California Sweet Potato Corporation, alleged in the complaint to have been wrongfully converted by defendants to their own use, was in fact issued to A. G. Col (the receiver) personally and not as an officer of said corporation plaintiff, nor in trust for said corporation; that at said time said A. G. Col was a party defendant in an action in the superior court in the city of San Francisco, wherein H. Edwards, assignee of defendant E. L. Jewett, sought to recover

from the plaintiff corporation the sum of $75,000 on account of certain moneys alleged to have been advanced by said Jewett to the plaintiff corporation, and on account of the payment by said Jewett as surety of certain moneys due on promissory notes of the plaintiff corporation. Said affidavit contained the further statement, on information and belief, that said A. G. Col "is now a stockholder in plaintiff corporation"; that in another action in the superior court of Stanislaus County the said A. G. Col and others are plaintiffs, and the plaintiff corporation, E. L. Jewett, C. W. Hunt and L. E. Bontz are defendants; in which action N. E. Wretman appears as attorney representing the California Sweet Potato Corporation.

N. E. Wretman, who had made affidavit regarding the manner in which the business of the defendant A. G. Col Incorporated was conducted, was called as a witness at said hearing, and testified in substance, among other things, that he had never seen a statement of the assets and liabilities of the defendant A. G. Col Incorporated; that he knew, or had been informed, of no debts of the said defendant corporation other than an indebtedness of $20,000 which was evidenced by a mortgage of record, and one other debt of $10,000; and that he had no information as to whether or not the said defendant corporation was able to meet its current obligations as the same fell due, but had information to the effect that it had an overdraft on its account at the bank, and had based his statement, contained in his affidavit heretofore referred to, to wit, that A. G. Col Incorporated was at that time in imminent danger of insolvency, upon information which he had received from A. G. Col that said defendant "had no money to start with, and that they are moving ahead with this litigation the way they do and that they are urging their collections unduly the last week or so," and upon information of the way in which defendants Jewett, Bontz, and Hunt had run the business of the California Sweet Potato Corporation.

A. G. Col testified that at the time of his appointment as receiver for the defendant corporations he was the owner of 200 shares of the capital stock of the plaintiff, California Sweet Potato Corporation, but that after his appointment as receiver, and on the morning on which the hearing was had, he had transferred said stock to his son, M. P. Col; also

that the corporation A. G. Col Incorporated owed one creditor, Mable Jewett, the sum of $32,000; that the company had other obligations outstanding; and that in his opinion the value of its property was about $50,000 and book accounts owing to the corporation defendant amounting to approximately $40,000.

Grant J. Hunt and J. C. Jewett each testified in substance that he was entirely familiar with the business affairs of the defendant corporations; that each of said corporations was solvent, and in no danger of insolvency; that they were paying their current debts and liabilities as the same fell due; and that they were not squandering or attempting to squander or waste the assets of said corporations, or place the same beyond the reach of any order which might be made by the court.

Mr. Hunt also testified that the "book overdraft" at the bank, amounting to $1,000 or $2,000 would have been taken care of by the deposit of funds before checks representing the overdraft could be presented for payment; and that no special efforts had been made on any day in the month of June, 1925, to hurry collections.

Mr. Jewett also testified that during the five months immediately preceding the hearing, the defendant, A. G. Col Incorporated, had made a profit on the operation of its business of approximately $15,000; that within the three or four days next preceding the hearing, the said defendant had been pressing the collections of some large overdue accounts.

The affidavit of E. M. Rosenthal, which was also a part of the evidence before the court, showed that, from the date of the incorporation of A. G. Col Incorporated, he acted as the auditor of its business books and accounts, and was thoroughly familiar with all its financial transactions; that during the five months next preceding June 1, 1925, an audit of the books of said corporation showed a net profit of $15,-594.81; that on May 31, 1925, the balance sheet disclosed quick assets amounting to $83,507.51, fixed assets of $70,926.95, and a net worth of said corporation, over all its liabilities, of $54,578.64; that a healthy financial condition existed as to said corporation, and that its business was conducted in a careful and conservative and businesslike manner; and that its entire income was deposited in the Bank

of San Jose and at all times disbursed only for its operating expenses and for the purchase of produce which it handled.

The evidence also satisfactorily showed that J. P. Napoli was a stockholder in the California Sweet Potato Corporation; and that at the close of the hearing the court ordered that "the appointment of Mr. Col heretofore made is set aside and terminated and Mr. Joseph Napoli is appointed receiver *pendente lite*."

[1]    The foregoing, while not by any means stating the entire evidence before the trial court, is nevertheless a condensed statement of the material evidence relating to the appointment of the receiver, *ex parte* and finally, which is shown by a transcript of the reporter's notes taken on the hearing and the various affidavits and pleadings filed in the case.    It thus appears that the entire record is placed before this court in this proceeding.    It is therefore competent, notwithstanding the fact that a writ of prohibition is prayed, that this court review the entire proceedings, and grant such relief as may be proper in the premises.    (*Van Hooscar v. Railroad Com.*, 189 Cal. 228 [207 Pac. 903] ; *Traffic Truck Sales Co.* v. *Justice's Court*, 192 Cal. 377 [220 Pac. 306] ; *Swim* v. *Superior Court*, 193 Cal. 539 [226 Pac. 2] ; *Finn* v. *Butler*, 195 Cal. 759 [235 Pac. 992].)

[2]    By numerous authorities, the principle is unequivocally announced that, from the standpoint of the business welfare of a defendant corporation, the appointment of a receiver on an *ex parte* application is so dangerous an expedient that it should be done only in cases of the greatest emergency and where, without such appointment, irreparable injury will unquestionably result.    (*Fischer* v. *Superior Court*, 110 Cal. 129 [42 Pac. 561] ; *Hobson* v. *Pacific States M. Co.*, 5 Cal. App. 94 [89 Pac. 866] ; *Ryan* v. *Murphy*, 39 Cal. App. 640 [179 Pac. 517].)

[3]    It is also a well-established rule that a receiver should not be appointed where a remedy less drastic in its nature and scope is available, and which will insure to the litigants adequate protection.    In the case of *Dabney Oil Co.* v. *Providence Oil Co.*, 22 Cal. App. 233, 239 [133 Pac. 1155, 1158], it is said: "And a receiver should not be appointed where the desired result can be obtained by less stringent means calculated to protect the rights of all parties (*Hayes* v. *Jasper Land Co.*, 147 Ala. 340 [41 South. 909] ; *Secord* v. *Wheeler*

*Gold M. Co.,* 53 Wash. 620 [17 Ann. Cas. 914, 102 Pac. 654]). 'Where an injunction will protect all the rights of which the applicant for the appointment of a receiver appears to be entitled, a receiver will not be appointed.' (34 Cyc., p. 25; *Hickley* v. *Parrot Silver etc. Co.,* 25 Mont. 164 [64 Pac. 330].)'' (See, also, *Jones* v. *Smith,* 40 Fed. 314; *Fischer* v. *Superior Court,* 110 Cal. 129 [42 Pac. 561].)

[4]   The California Sweet Potato Corporation in the prayer of its complaint asked that it be decreed that the property described therein was held in trust by the defendants for the benefit of the plaintiff; that an accounting be had; and that the stock referred to in the complaint be delivered to the plaintiff.

It is clear that every presumed right (other than the appointment of a receiver) of the California Sweet Potato Corporation, for which it prayed in its complaint, could have been fully and completely protected and made available by a writ of injunction, or by other remedies provided by statute. It would appear that there was no such emergency, pending or imminent, which required so harsh a remedy as the ousting of the regularly qualified and acting and financially successful officers of the defendant corporations, and the substitution therefor of a receiver for the management and control of the business of the corporations.

[5]   Section 564 of the Code of Civil Procedure provides that ''A receiver may be appointed . . . in the cases when a corporation . . . is . . . in imminent danger of insolvency . . . '' It is therefore apparent that before the court would have been justified, on that ground, in making an *ex parte* order appointing a receiver, it must have appeared by appropriate allegations in the complaint that the financial condition of the corporations defendant was such that they were ''in imminent danger of insolvency.'' It is said in the case of *Dabney Oil Co.* v. *Providence Oil Co.,* 22 Cal. App. 233, 237 [133 Pac. 1155]: ''Section 564 of the Code of Civil Procedure provides in what cases the court may appoint a receiver, and in the absence of facts showing that the case falls within some or more of the provisions of the section, no authority exists for such appointment.'' The only allegation of the complaint which can be said to clearly constitute an attempt on the part of the plaintiff to comply with the requirements of the statute is that, ''Plaintiff is informed

and believes . . . that said corporation (A. G. Col Incorporated) is in imminent danger of insolvency."

[6] In the first place, it should be noted that the statement regarding the imminency of the insolvency of the corporation defendant is not direct, but that it is made on information and belief, and, consequently, is entitled to little weight; but, even assuming that its capacity as a pleading is not affected thereby, according to adjudications heretofore announced by this court, it is insufficient.

In the case of *Bank of Woodland* v. *Stephens*, 144 Cal. 659 [79 Pac. 379], which, among other things, involved the question of the right of the court to appoint a receiver in a suit to foreclose a mortgage, it was held that an allegation "that the security is insufficient," without stating facts upon which to base such allegation, was insufficient to justify the appointment of a receiver. The court said: "Such a statement is no more than a conclusion. It is no better than the statement sometimes contained in a complaint for an injunction, that if the acts threatened are committed 'the plaintiff will suffer irreparable injury which cannot be compensated in damages.' This is always held insufficient to authorize or support an injunction. The same rule should be applied here. The appointment of a receiver involves the taking of the defendant's property from his possession—a measure more violent and drastic than an injunction. It should never be allowed in cases of mortgage foreclosure, except upon a statement of facts showing that the actual value of the mortgaged premises is less than the debt secured, with interest and costs, and that resort to the rents and profits is necessary."

The same conclusion is reached by the court in *Title Ins. & Trust Co.* v. *California Development Co.*, 164 Cal. 58 [127 Pac. 502], where the following language appears: "The only attempt to establish the second ground mentioned consisted of an allegation in the complaint stating 'that as plaintiff is informed and believes and therefore avers, the aforementioned property is probably insufficient to discharge the mortgage debt aforesaid.' Neither the value of the property, nor any facts indicating its value, are set forth in the complaint or in the affidavit. The decision in *Bank of Woodland* v. *Stephens*, 144 Cal. 660 [79 Pac. 379], is directly to the point that this is not a sufficient allegation

of fact to justify the appointment of a receiver under this clause of the section.''

[7] But, aside from any question of the sufficiency of the pleading, the facts adduced on the hearing of the motion to vacate the *ex parte* order appointing the receiver were not sufficient to sustain the necessary conclusion by the court that the defendant therein, A. G. Col Incorporated, was ''in imminent danger of insolvency.'' The only evidence, other than the naked conclusion—on information and belief—contained in the affidavit of N. E. Wretman that said corporation was ''in imminent danger of insolvency,'' which at all bore on the issue, was that said defendants had encumbered the property owned by the defendant corporations ''to the extent of $20,000.00 and upwards''; and, further—on information and belief—''that the defendant A. G. Col Company Inc. never had, or possessed any real capital or assets.'' It also appeared that the defendant corporation had an overdraft at the bank, which would have been covered by deposits made by the defendant before the checks representing the overdraft had been presented for payment. The other assumed facts set forth in the complaint related more particularly to the issues therein presented of accounting by the defendants, or to that of a trust in them—all for the benefit of the California Sweet Potato Corporation. On the other hand, the assumed facts contained in the affidavits introduced by the defendants, together with the uncontradicted facts as testified to by witnesses, clearly demonstrated that the ''information and belief'' relied upon by Mr. Wretman for his said statements contained in the complaint and in his supporting affidavit were untrustworthy and unreliable.

Counsel for respondents now contend, for the first time, that, aside from the special statutory requirement that either insolvency or imminency of insolvency of the corporation be made to appear before a receiver can be lawfully appointed, the general and inherent powers of a court of equity may be invoked under the further provisions of section 564 of the Code of Civil Procedure, which authorize the appointment of a receiver in those cases where a receiver has ''heretofore been appointed by the usages of courts of equity''; also, ''where any party whose right to or interest in the property or the proceeds thereof is probable, and

where it is shown that the property or fund is in danger of being lost, removed or materially injured."

In the *French Bank Case,* 53 Cal. 495, it was ruled (syllabus) : "The general and ordinary jurisdiction of courts of equity does not embrace the power to appoint a receiver of the property of a corporation in aid of a suit prosecuted against the corporation by a private person, but such power, if it exist at all, must be derived from a statute conferring it upon the court.

"Sec. 564 of the code of civil procedure does not confer it."

But, under this proceeding, it is unnecessary to determine whether or not a receiver of a corporation may be appointed where a proper showing is made. All that is intended by the foregoing is that neither the allegations (on information and belief) of the complaint nor the evidence adduced warranted the conclusion by the trial court that a receiver should be appointed, either on an *ex parte* application for such an order, or on hearing after notice, because the corporation was in "imminent danger of insolvency."

It will be remembered that, strictly speaking, the motion before the court was that of vacating an *ex parte* order appointing a receiver, theretofore made, and not that of appointing a receiver on a notice given to the defendants; although it also appears in the record that such a notice had been given, and which had been set for hearing at a time two days later than the date on which the motion to vacate the *ex parte* order appointing the receiver came on for hearing. There are, however, statements by the attorneys representing the respective parties, contained in the transcript of the proceedings on the hearing of the motion, which would seem to indicate that by implied stipulation the entire matter was being considered,—the judge of the court remarking, "I will hear you upon this matter. You will take your consequences one way or the other." The "consequences" were that A. G. Col, who theretofore had been appointed receiver of the defendant corporations on the *ex parte* application of the California Sweet Potato Corporation, and who was a large stockholder in such corporation, was discharged as such receiver, and J. P. Napoli, who likewise was a stockholder in the plaintiff corporation, was appointed in his stead.

Section 566 of the Code of Civil Procedure, provides, in part, that no ''person interested in an action can be appointed receiver therein without the written consent of the parties, filed with the clerk.'' An examination of the proceedings herein discloses that no written consent to the appointment of J. P. Napoli as receiver of the defendant corporations was ever filed with the clerk. However, there is contained in the order of the court, in which J. P. Napoli is appointed receiver, a recital that ''all parties agreed and stipulated in open court that the order heretofore made appointing A. G. Col as receiver may be and the same is hereby vacated and set aside and that Joseph P. Napoli, of San Jose, California, be and he is hereby appointed receiver *pendente lite,*'' etc.

[8] Without considering the question of whether or not an oral agreement or oral stipulation in open court may become the lawful substitute for the statutory requirement of a written consent filed with the clerk, permitting the appointment as receiver of a person interested in the action, under the authorities heretofore cited (*Van Hoosear* v. *Railroad Com.,* 189 Cal. 228 [207 Pac. 903], *Traffic Truck Sales Co.* v. *Justice's Court,* 192 Cal. 377 [220 Pac. 306], *Swim* v. *Superior Court,* 193 Cal. 539 [226 Pac. 2], and *Finn* v. *Butler,* 195 Cal. 759 [235 Pac. 992]), this court is authorized to review the entire record, as on *certiorari,* and determine for itself just what situation was presented to the trial court, and to award such relief as may be proper in the premises. [9] With respect, then, first to the facts as presented by the transcript of the proceedings, concerning whether or not there was actually any consent by the defendants to the appointment of Mr. Napoli as receiver in the suit: It appears that the attorney representing the defendants made many objections thereto, such, for example, as ''I want to state that we do not consent to the appointment of a receiver. [The Court: I know you are not consenting to it.] . . . This is appointing an interested party as a receiver of that business. . . . I am making objection. . . . I have not consented to the receiver, but I will work with Napoli, but not under a receiver (which last statement was made by J. C. Jewett, manager of the defendant corporations), . . .'' Also, the following by defendants' attorney: ''Mr. Sheffey: Under the circumstances, your Honor

has no jurisdiction to appoint a receiver. They have not shown that this business is in imminent danger of insolvency, which is the only ground on which they proceed to ask for the appointment of a receiver."

The following also appears of record: "The Court: If you raise the question of insufficiency, I want you to understand that I am not cutting off the other side from presenting their case, if they want time, I shall give them time.

"Mr. Sheffey: Before your Honor should appoint a receiver to take our business out of our hands, there should be a sufficient showing of the necessity. . . .

"Mr. Sheffey: Why don't you do this: Set aside the order appointing the receiver, and continue this matter until both sides have had full opportunity to be heard on the question of whether or not a receiver is necessary. . . .

"The Court: *You will accept Mr. Napoli by consent at this time, or else the Court will have, at this late hour, to continue this matter until tomorrow and hear the other side, and hear your side, too, to the final, to the final determination of this question of a receivership.* If sufficient showing is made, the Court will appoint a receiver; if you do not consent, and inasmuch as the Court will appoint, make its own appointment, whether Mr. Col or somebody else, I do not know,—if your people make their showing legally,— then the Court will deny the receivership,—that is all there is to the case; it is just a question of proof or no proof, whether they are within the law or without the law. So unless there is a consent to this matter, I will continue the matter until tomorrow. . . .

"The Court: The Court is going to determine *whether it will appoint a receiver at all or not,* and if it appoints a receiver *it will be pendente lite.* . . .

"Mr. Sheffey: *I would rather have Mr. Napoli appointed, then to have the matter continued, in the situation it now is.*

"Mr. Foley: That is all right.

"The Court: *That settles it.*

"Mr. Sheffey: The bond provides that he shall be liable for any damage caused by the appointment of a receiver improperly.

"Mr. Foley: He has been appointed by consent.

"Mr. Sheffey: *We did not consent.* . . .

"The Court: The Court will make the appointment on those conditions, and the appointment of Mr. Col heretofore made is set aside and terminated. And Mr. Joseph Napoli is appointed receiver *pendente lite;* and his bond fixed at $10,000.00 surety bond."

From the foregoing it is clear to this court that, if it can be said that the attorney representing the defendants consented at all, it was not a free and voluntary consent, but rather a manifestation on his part that, as a matter of preference, if the court insisted upon continuing the matter in its then status, with Mr. A. G. Col as receiver, it would be more agreeable to the defendants to have Mr. Napoli appointed receiver. Nowhere does it appear that the defendants waived their objections, or any of them, to the appointment of a receiver; but, to the contrary, the record contains frequent statements on the part of counsel representing the defendants that the court was without jurisdiction to appoint a receiver at all, and that the defendants especially objected to the appointment of any person interested in the action. As a final statement, in response to one by plaintiffs' attorney that Mr. Napoli was appointed by consent, we find that defendants' counsel said: "We did not consent"; and, although it appears from the answer filed herein by the respondents that the judge of the trial court did not hear either of the statements last referred to, there is no denial of the fact that either of the statements was made or that the court was in session at the time they were made. As tending to show that the defendants did not consent to the appointment of a receiver for said corporations, it may be noted that the petition herein was filed on July 6, 1925, which was within four days after the date of the filing of the order by which J. P. Napoli was appointed as such receiver. It must therefore be taken as true that, as a conclusion of the entire matter, neither "the written consent of the parties, filed with the clerk," nor the oral consent of the defendants, was obtained.

But, even had the voluntary consent of the defendants appeared of record as disclosed by the reporter's transcript of the proceedings, it is nevertheless doubtful, considering the question from the standpoint of consent by a corporation to the appointment of a receiver for itself, rather than the appointment of some specified person to that official position,

that the corporation had the power to thus divest itself of its corporate functions, and confer corporate rights and duties upon an individual.

In the case of *Elliott* v. *Superior Court,* 168 Cal. 727 [145 Pac. 101], where it appeared that a receiver of a corporation had been appointed by and with the consent of the corporation, it is said: "The fact that the Gibraltar Company consented to the appointment of a receiver is immaterial. Such consent did not and could not confer jursdiction upon the court to make the appointment."

And in *Smith* v. *Superior Court,* 97 Cal. 348 [32 Pac. 322], the language of the court is: "Nor would the consent of defendant railroad to the appointment of the receiver at all affect the right of any creditor aggrieved thereby to have the order appointing such receiver annulled in a proceeding of this character." See, also, *Bank of Woodland* v. *Stephens,* 144 Cal. 659 [79 Pac. 379].

Concluding the entire matter of the legal propriety of the appointment of Mr. Napoli as receiver of the corporation defendants, it may safely be said that in view of the fact that there was no compliance with the statutory provisions requiring the written consent of the defendants to his appointment to be filed with the clerk, nor any oral consent thereto by the defendants in open court (assuming, without deciding, that such course might have been pursued), the court was without jurisdiction to make the appointment.

[10] It is urged by respondents that prohibition is not the proper remedy, and that for any prejudicial error committed by the trial court as against the rights of the defendants, they were afforded an adequate remedy by appeal.

In the case of *Davis* v. *Superior Court,* 184 Cal. 691 [195 Pac. 390], which also was a proceeding for a writ of prohibition for the purpose of preventing the superior court from further proceeding in an action before it, it is said (p. 696):

"With regard to the remedy by appeal, the facts are that the order vacating the judgment of dismissal was made on January 2, 1920; that it was a special order made after final judgment and was appealable, and that the right of appeal expired on March 2, 1920. (Code Civ. Proc., sec. 963, subd. 2.) On that day the present proceeding in prohibition was begun in the district court by the filing of the petition upon which that court issued an order to show cause. While the exist-

ence of the right of appeal at that time might have been a sufficient reason for that court to have then refused to entertain the petition (*Glougie* v. *Superior Court,* 169 Cal. 675, [147 Pac. 972]), yet, in view of the fact that the superior court was then, and ever since has been, without power or jurisdiction to proceed further in the action, as we have shown, but nevertheless proposes to do so, and that further proceedings of any kind, except to again dismiss the action, would be void, we are disposed to grant the writ, rather than put the parties to further vexation and useless expense by further attempts to prosecute it. The question is largely one of discretion, and we deem it the better policy to terminate the proceedings forthwith.''

The case of *Grinbaum* v. *Superior Court,* 192 Cal. 528, 560 [221 Pac. 635], was an application for a writ of review, in which proceeding the same rule suggested by respondents herein ordinarily obtains. The proceeding was brought for the purpose of annulling an order appointing a guardian of an alleged insane person, on the ground of want of notice of the guardianship proceeding to such person; and it was held, following the case of *Davis* v. *Superior Court,* 184 Cal. 691 [195 Pac. 390], that the contention of respondent that the alleged incompetent had a plain, speedy and adequate remedy other than by a writ of review could not be upheld, although it manifestly appeared that other remedies were available to the petitioner.

And so in the instant case, while it is true that petitioners had a remedy by appeal from the orders of which complaint is made, nevertheless, for obvious reasons, including the long delays and consequential damages incident thereto, to again quote the language used by the court in the Davis case (*supra*), ''we are disposed to grant the writ, rather than put the parties to further vexation and useless expense by further attempts to prosecute it. The question is largely one of discretion, and we deem it the better policy to terminate the proceedings forthwith.''

It becomes unnecessary to discuss the additional point suggested by petitioners, that the complaint in the suit in California Sweet Potato Corporation against L. E. Bontz et al. does not state a cause of action.

It is the order of the court that the order of the trial court by which A. G. Col was appointed receiver on the *ex*

*parte* application of the plaintiff in the suit to which reference has been had, as well as the later order therein appointing J. P. Napoli receiver on the hearing of the defendants' motion to vacate the former order, be and they are hereby vacated and annulled.

Seawell, J., Myers, C. J., Shenk, J., Lawlor, J., Richards, J., and Lennon, J., concurred.