[No. 22875. Department One. April 2, 1931.]

John W. Horejs *et al., Appellants,* v. American Plumbing & Steam Supply Company *et al., Respondents.*[1]

*Neal & Bonneville,* for appellants.
*Hayden, Langhorne & Metzger,* for respondents.

Main, J.—By this action, the plaintiffs sought to have a receiver appointed for a solvent corporation. To the amended complaint (which will be referred to as the complaint), a demurrer was interposed and sustained. The plaintiffs refused to plead further, and elected to stand upon their complaint. Judgment was entered dismissing the action, from which they appeal.

The complaint is too long to be set out here in full, and we will therefore undertake to briefly state only

[1] Reported in 297 Pac. 759.

what appear to us to be the essential facts alleged therein.

In the spring of 1919, the appellants, with the respondent Joe L. Long, organized the American Plumbing & Steam Supply Company, a corporation, which subsequently engaged in business in the city of Tacoma. The capital stock of the corporation was twenty-five thousand dollars, of which Long furnished $12,750, and the appellants $12,250, consisting of five or six thousand dollars cash and a loan from Long for the balance. The $12,750 furnished by Long constituted fifty-one per cent of the capital stock of the corporation, and was owned as follows: Seventeen per cent by Long; seventeen per cent by H. K. Monroe; and seventeen per cent by George I. Hill and wife. Monroe and Hill and wife are relatives of Long, and, although they are the record owners of the stock, it was paid for by Long. The remainder of the capital stock, or forty-nine per cent, was owned by appellants.

Long, at the time the corporation was organized, assured the appellants that he would not be active in the business, and would be satisfied with dividends which the same would yield; he, with Monroe and Hill, being engaged in the wood pipe business on a large scale. Immediately after the formation of the corporation, the appellants took up the active management thereof, and continued such management until January 8, 1930. During this period, the business showed a profit, over and above salaries and bonuses, of approximately two hundred thousand dollars, most of which was earned during the early years of the corporation's existence.

Immediately after the formation of the corporation, Long required that he be placed upon the payroll of the company at a salary of two hundred dollars per month, and such salary was at all times charged as an

item of expense and credited to him until January 1, 1929. On that date, his salary was increased to six thousand dollars per year on his assurance that he proposed to devote his time and attention to the furtherance of the business of the corporation. For a short time, he did devote his time and attention to its business, but later abandoned all efforts on behalf of the company, continuing, however, to draw his salary of five hundred dollars per month.

During the latter part of the year 1928, Long informed the appellants that he proposed to place his brothers-in-law, Monroe and Hill, upon the payroll of the company, and that he was dissatisfied with the returns which the family were receiving upon their investment. Appellants objected to the placing of Monroe and Hill upon the payroll without the rendition by them of service to the corporation, and nothing further was done about the matter until late in the year 1929. Sometime prior to the annual meeting of the stockholders on January 8, 1930, Long informed the appellants that he proposed to place upon the payroll of the corporation Monroe and Hill, and that if the appellants objected they would be discharged. The appellants did object, and were accordingly discharged and removed from office, except that the appellant Horejs was permitted to remain as trustee.

At the annual meeting in January, 1930, respondents elected Long as president of the corporation, and fixed his salary at six thousand dollars per year; Monroe as vice-president, at a salary of forty-eight hundred dollars per year; and Hill as secretary, with a salary of forty-eight hundred dollars per year. At this time, the appellants were discharged from the management of the company, and from its employ. The salaries fixed are greatly in excess of the value of services to the corporation of the parties named. Long, acting

for himself and the other trustees, offered to permit the appellants to remain upon the company's payroll upon condition that their salaries be materially reduced. Long, Monroe, and Hill did not have any knowledge of the plumbing and steam supply business, in which the corporation was engaged, and had never engaged in that line of business.

During the time Long had been connected with the company, he had been paid $28,200 in salaries, for which he had rendered no service, and interest on this salary account had been compounded annually for a long period of years (which would indicate that the salary had not been paid, but only credited on the books). During the life of the corporation, Long, by reason of his control of the fifty-one per cent of the stock, obtained from the company the sum of approximately thirty thousand dollars to which he was not entitled.

The earnings of the company and the volume of business done was not sufficient to permit any greater overhead or salary account than already existed prior to January 8, 1930, when the corporate management was taken from the appellants, and the payment to Long, Monroe, and Hill of the salaries above mentioned would destroy the value of the stock held by appellants. The forty-nine per cent of the stock owned by appellants was of the value of approximately sixty thousand dollars.

' After the annual meeting in 1930, the appellants proposed to Long that they would sell their stock at a price named, or that they would purchase Long's stock at the same price; only fifteen thousand dollars of the purchase price to be paid in cash in either event. This proposition was rejected by Long, unless appellants would enter into contract not to engage in the

plumbing and heating business in Tacoma for a considerable period of time, which they declined to do.

The complaint further alleges that, prior to the time the American Plumbing and Steam Supply Company was organized, appellants had been employed by a large plumbing supply house in Tacoma; one as sales manager, and the other as assistant manager. They were induced to leave such employment and form the corporation upon the assurance that they would have fifty-one per cent of the stock. When the corporation was organized, Long refused to allow them to have fifty-one percent of the stock, but took that amount for himself and those associated with him. Shortly after the rejection by Long of the proposition made by appellants, in which they offered to sell or purchase, the present action was brought for the purpose above stated.

The first inquiry is as to what showing is necessary in order that a receiver may be appointed for a solvent corporation actively engaged in business, its affairs wound up, and the corporation dissolved.

The power of appointing a receiver is a discretionary one, and should be exercised with caution and only in cases where there is fraud, spoliation or imminent danger of the loss of property if immediate possession should not be taken by the court. In *Van Horn v. New Western Shingle Co.*, 54 Wash. 117, 103 Pac. 42, it is said:

" 'The power of appointing a receiver is a discretionary one to be exercised with great circumspection, and only in cases where there is fraud, spoliation, or imminent danger of the loss of the property if the immediate possession should not be taken by the court; and such facts must be clearly proved. The policy of the law is to leave the affairs of corporate bodies to the management and control of their own chosen agents and that a minority of stockholders will not be permitted to displace corporate authority and control

by substituting either for the policy, management and control of the courts, except in plain cases of such fraud or maladministration as works manifest oppression or wrong to them.' Beach, Receivers (Alderson's ed.), § 424. *Secord v. Wheeler Gold Min. Co.,* 53 Wash. 620, 102 Pac. 654.

"Within this rule, which is sustained by substantially all the authorities, we are not prepared to say that sufficient cause for the appointment of a receiver could not be made out under the allegations of this complaint, liberally construed, and the complaint must be so construed, especially where objection to the sufficiency of the complaint is first raised by objection to the introduction of testimony at the trial."

Under the facts of that case, it was held that a receiver should be appointed, but, as stated in the opinion, "it is manifest that the company is on the brink of insolvency, and that the appellant's interest in the company will be utterly dissipated and lost."

The excerpt from the text quoted in that opinion was also quoted with approval in the prior case of *Secord v. Wheeler Gold Min. Co.,* 53 Wash. 620, 102 Pac. 654, 17 Ann. Cas. 914.

In some of the authorities, the words "fraudulent, illegal or ultra vires" are used instead of "fraud, spoliation or imminent danger of the loss of property," but the meaning of the two groups of words is substantially the same.

In *Bergman Clay Mfg. Co. v. Bergman,* 73 Wash. 144, 131 Pac. 485, it is said:

"A court will not interfere merely to settle disputes between stockholders, or to substitute its judgment for that of the majority of the trustees. Men differ in their judgment, and the law is that a majority of the stockholders, or in the interim between stockholders' meetings, the trustees, shall manage and control the affairs of the corporation. Some controlling equity must intervene to warrant the interposition of the court."

With the rule of the cases cited in mind, we will now look to the facts relied upon in the case now before us. In the complaint, it is repeatedly charged that Long, Monroe, and Hill and wife had been guilty of fraud, and had entered into a conspiracy to the prejudice of the rights of appellants. No facts are shown which would constitute fraud or conspiracy, unless it be the fact that at the annual meeting in January, 1930, the parties above named voted themselves the salaries mentioned. It must be remembered that, prior to that time, the appellants had at all times had the management of the corporation and its business affairs.

Even though Long made the agreement, at the time the corporation was organized, that he would not be active in the management of its affairs, and that the appellants should have the management thereof, the breach of this agreement would not furnish a ground for the appointment of a receiver. In *Hampton v. Buchanan*, 51 Wash. 155, 98 Pac. 374, it is said:

"There is no authority which would permit a corporation to enter into a contract which would place the trustees under obligations to disregard the duty they owed to the stockholders, viz., to promote the business interests of the corporation; and, this they certainly could not do if they were so fettered by contract that they could not dismiss an employee and act freely and purely for the business interests of the stockholders when emergencies arose. The granting of such powers as are relied upon by the respondent through this agreement would virtually deprive the stockholders of the right to elect their trustees. Therefore, equity will not assume jurisdiction to compel the specific performance of an illegal contract. That such a contract is illegal all authority asserts; but see especially, *West v. Camden*, 135 U. S. 507, 10 Sup. Ct. 838, 34 L. Ed. 254, and *Reed v. Johnson*, 27 Wash. 42, 67 Pac. 381, 51 L. R. A. 404. The policy of the law is not changed by the fact that the stockholders are many or few."

It would seem that the appellants are not in a position to ask that a receiver be appointed for the corporation on account of something that was done during the period when they were the managers thereof.

Coming now to the question of the salaries; even though the salaries voted at the annual meeting in 1930 were illegal, this would not furnish a ground for a receivership, because the appellants had an adequate remedy, in that on a proper showing they could bring an action to restrain the payment of such salaries, or, if payment had already been made, to recover the the same for the benefit of the corporation. In *Curtiss v. Dean & Curtiss*, 85 Wash. 435, 148 Pac. 581, it is said:

"The fact that Dean caused his salary to be increased from $2,000 per year to $2,400 per year is not sufficient reason to authorize the court to appoint a receiver. If this increase of salary is illegal, upon a proper showing the plaintiff may cause an action to be instituted for the purpose of restraining its future payment, and for the purpose of recovering to the corporation any illegal salary which may have been previously paid. 3 Clark & Marshall, Private Corporations, p. 2062; 2 Thompson, Corporations (2nd ed.), § 1763; *Alabama Coal & Coke Co. v. Shackelford*, 137 Ala. 224, 34 South. 833, 97 Am. St. 23; *Schaffhauser v. Arnholt & Schaefer Brewing Co.*, 218 Pa. 298, 67 Atl. 417."

The fact that the parties could not adjust their differences by an agreement to buy or sell, does not call upon a court of equity, in the exercise of its discretion, to appoint a receiver for a solvent corporation actively engaged in business.

Whether a receiver shall be appointed in a particular case, must of necessity depend largely upon the facts of that case. We have examined with care the authorities cited by the appellants and relied upon by them,

594

but the facts in each of those cases materially differ from those in the case under consideration.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.